# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
     :
           v.      :    No. 1021 C.D. 2014
     :
$34,440.00 U.S. Currency      :    Submitted: December 9, 2015
     :
Appeal of: Rafael Falette      :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[2]
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge[3]


**OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: April 19, 2016**


Rafael Falette appeals from the Order of the Court of Common Pleas of Monroe County (common pleas) that granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture (Petition) of $34,440 under the Controlled Substances Forfeiture Act[4] (Forfeiture Act). Common pleas found that the Commonwealth met its burden of proof under the Forfeiture Act and that Falette did not establish that he was "the owner of the currency, that the currency was lawfully obtained and that he does not possess the currency for illegal

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[4] 42 Pa. C.S. §§ 6801-6802.

purposes." (Order, May 15, 2014.) On appeal to this Court, Falette argues that common pleas erred in concluding that the Commonwealth established the required nexus between the seized cash and unlawful activity necessary under the Forfeiture Act and in admitting certain opinion testimony without proper foundation. For the following reasons, we affirm.

## I. Background

On August 7, 2009, Pennsylvania State Police (State Police) Trooper Derek Felsman (Trooper Felsman) was patrolling Interstate 80 (I-80) in Monroe County when, at 6:00 p.m., he initiated a traffic stop of a black Lincoln Town Car for Traveling Too Closely to Another Vehicle, i.e., tailgating. Trooper Felsman explained that he observed four individuals in the vehicle, including the driver, Juan Lugo. Lugo produced a valid New Jersey driver's license and registration card, which revealed that Lugo's sister owned the vehicle. Sitting next to Lugo was his brother and there were two other passengers in the back seat. Subsequently, Trooper Felsman searched the vehicle and discovered four ecstasy pills in the cigarette outlet in the center console area of the vehicle and four small plastic bags containing marijuana "in the right rear passenger door, underneath the cigarette ashtray." (Hr'g Tr. at 16, 18, R.R. at 33a, 35a.) Lugo admitted that the drugs were his. Trooper Felsman continued his search and found $34,440.00 in cash hidden under the seatbelt attachment in the "B pillar" on the passenger side of the vehicle.[5] Lugo and the other passengers denied ownership of the cash or knowing that it was there. The State Police confiscated the cash and drugs.

---

[5] A "B pillar" is "one of two support posts that connect a vehicle's roof to its body at the rear of the front door." http://www.merriam-webster.com/dictionary/b-pillar (last visited May 26, 2015).

2

Trooper Felsman gave Lugo a warning for tailgating and charged him with possession of a controlled substance for personal use (the ecstasy tablets); possession of a small amount of marijuana for personal use; and possession of drug paraphernalia (the plastic bags that contained the marijuana). Lugo pleaded guilty in December 2009 to the marijuana possession charge, the remaining charges were *nolle prossed*, and he was sentenced to 15 to 30 days in prison and a fine of $105.

The Commonwealth filed the Petition on November 24, 2009, seeking to forfeit the $34,440.00 found in the vehicle. Falette, who was not present during the August 7 traffic stop, filed an answer (Answer) asserting ownership of the cash, and that the cash had no relationship to illegal activity, but was derived from the settlement of a personal injury lawsuit. Attached to the Answer were two checks from a law firm made out to Falette with the notation "Settlement Proceeds to Client." or "Settlement Funds." (Answer, Exs. 1-2.) One check, dated June 17, 2009, was for $14,496.22, and the second, dated July 16, 2009, was for $23,303.33. (Answer, Exs. 1-2.)

Common pleas held a hearing on the Petition on April 17, 2014, at which the both the Commonwealth and Falette presented evidence. The Commonwealth offered Trooper Felsman's testimony. Trooper Felsman explained that, upon effectuating the traffic stop, he observed four individuals in the vehicle: Lugo, Lugo's brother, and two others in the back seat. Lugo indicated that his sister, who owned the car, let him and others use her vehicle. On that day, he was taking a friend, one of the back seat passengers, somewhere in Pennsylvania. Lugo stated that he did not know exactly where they were traveling, but that the friend was giving him directions to their destination. After collecting the occupants' identification, Trooper Felsman ran a search on the State Police database, which

3

revealed that Lugo and his brother had been charged with assault, burglary, and credit card fraud. The back seat passengers had no criminal charges or convictions.

Trooper Felsman then asked Lugo for permission to search the vehicle because: he smelled the odor of burnt marijuana; there were air fresheners in the vehicle; he suspected that the passengers in the back seat were pretending to be sleeping; and the portion of I-80 where he had stopped Lugo was "a heavily travelled drug corridor." (Hr'g Tr. at 9-10, R.R. at 26a-27a.) Falette objected to Trooper Felsman's testimony regarding I-80 as lacking foundation, which was overruled. Trooper Felsman stated that Lugo consented to the search. Trooper Felsman found four ecstasy pills in the cigarette outlet in the center console area of the vehicle and four small plastic bags containing marijuana "in the right rear passenger door, underneath the cigarette ashtray." (Hr'g Tr. at 16, 18, R.R. at 33a, 35a.) Lugo admitted the drugs were his, and Trooper Felsman charged Lugo with possession of drugs for his own personal use.

During the search, Trooper Felsman noticed that a screw was missing from the B Pillar on the vehicle's passenger side and, shining his flashlight in that area, he saw black plastic bags behind the plastic. He decided to investigate further, and, as he was removing the plastic housing from the seatbelt attachment, which "took a while," he observed Lugo giving him a "long blank" or "thousand yard stare." (Hr'g Tr. at 15, R.R. at 32a.) Trooper Felsman explained that watching the behavior of individuals during a traffic stop is important because that behavior can be an indicator of illegal activity. Trooper Felsman found two black plastic bags, each of which contained cash. The bags were transferred to the State Police barracks, counted, and found to total "$34,440 in numerous denominations of

4

hundred dollar, fifty dollar and twenty dollar bills." (Hr'g Tr. at 15-16, R.R. at 32a-33a.) None of the vehicle's occupants claimed the money and "denied knowing [that it] was there, [] whose money it was, how it got there, or how much it was." (Hr'g Tr. at 16-17, R.R. at 33a-34a.) Falette's name was never mentioned during or after the traffic stop.

Falette testified that he was a long-time friend of Lugo and Lugo's sister, and they all lived in Passaic, New Jersey. Falette claimed that the $34,440.00 found in the vehicle was his and part of the settlement proceeds he received in a personal injury lawsuit from a 2006 automobile accident. The case settled shortly before the August 2009 traffic stop, and he received two settlement checks from his lawyers for a total of $37,799.55. Cross-examination elicited the following testimony. Falette explained that after he deposited the checks in the bank he decided that he wanted to have cash on hand to impress people. Although Falette indicated that he took the cash out of the bank little by little over a period of months, Falette acknowledged that he deposited those checks on July 16, 2009, just a couple of weeks before the traffic stop. He said he spent a considerable amount of the proceeds, and then "stashed" the remaining $34,440.00 inside the B Pillar of the vehicle, which he regularly borrowed. (Hr'g Tr. at 28, R.R. at 45a.) Falette indicated that he did not tell anyone about his stash of cash, and did not know that Lugo was "going to use the car, you know, somehow, so fast." (Hr'g Tr. at 23-24, R.R. at 40a-41a.) He acknowledged that his decision to use someone else's vehicle as a savings bank was "stupid," and he attributed his bad decision to being young and foolish. (Hr'g Tr. at 24, R.R. at 41a.)

After hearing argument, common pleas took the matter under advisement. On May 15, 2014, common pleas found that the Commonwealth established a

5

"nexus between the seized currency and unlawful activity" and granted the Petition. (Order, May 15, 2014, at 1.) The court explained:

> Pursuant to the reasoning set forth in Commonwealth v. Burke, 49 A.3d 542 (Pa.[]Cmwlth.[]2012), the Commonwealth has sufficiently established a nexus between the seized currency and unlawful activity based on the following factors: (1) presence of drugs in close proximity to the currency at the time of the stop which creates a rebuttable presumption that it is related to drug trafficking,[6] (2) inconsistent statements made by the vehicle occupants' [sic] as well as their unusual behavior at the time of the stop, including the back passengers who were pretending to be asleep during the stop; [sic] (3) the drivers' [sic] drug-related conviction as a result of the stop, (4) the placement of the currency in the B Pillar of the car, an area which was not intended for use by the manufacturer, (5) the packaging of the money in two plastic bags, and (6) the fact that the car was registered to a third party.
>
> Furthermore, the Court finds that the claimant, Raphael [sic] Falette, failed to establish himself as the owner of the currency, that the currency was lawfully obtained and that he does not possess the currency for illegal purposes. Falette testified that the money was proceeds from a civil lawsuit settlement and that he placed it in the B Pillar to show it off to his friends and for easy access to the money. We find this explanation to be both illogical and devoid of any credibility. The money was neither easily accessible nor was it openly stored for showing it off to his friends. Instead, it was in an area of another person's vehicle which was not intended for use by the manufacturer. Therefore, the placement of the money is not consistent with [Falette's] explanation.

(Order, May 15, 2014.)

---

[6] Section 6801(a)(6)(ii) of the Forfeiture Act provides that "money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act), Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §§ 780-101–780-144,] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Drug Act]." 42 Pa. C.S. § 6801(a)(6)(ii).

Falette appealed, and common pleas directed him to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Falette did so, challenging common pleas' conclusion that the Commonwealth met its burden of proving a nexus between the cash and unlawful activity and admission of Trooper Felsman's testimony regarding I-80 being a "drug corridor." (1925(b) Statement, Falette's Amended Br. at 28.) In its 1925(a) opinion, common pleas stated that it had adequately addressed the issues raised in Falette's 1925(b) Statement in its May 15, 2014 Order. Common pleas further concluded that, while it believed that the Commonwealth had laid the proper foundation for Trooper Felsman's I-80 "drug corridor" testimony, if it had erred, any error was harmless because that testimony "played no part in [the] adjudication of this matter." (1925(a) Op. at 1.) Falette now appeals to this Court.[7]

## II.    Discussion

On appeal, Falette first argues that common pleas erred in concluding that the Commonwealth met its burden of proving a substantial nexus between the $34,440.00 and unlawful drug activity by a preponderance of the evidence. Falette contends that common pleas could not rely on the rebuttable presumption that money found in close proximity to controlled substances is derived from selling

_____

[7] "This Court's review in an appeal from a forfeiture proceeding is limited to examining whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." Commonwealth v. $11,600.00 Cash, U.S. Currency, 858 A.2d 160, 163 n.3 (Pa. Cmwlth. 2004). "It is axiomatic that as factfinder the trial court is empowered to decide what evidence is credible and to draw any reasonable inferences from all of the evidence." Id. "Discretion is abused when, in reaching its conclusion, the trial court departs from or misapplies the law or the judgment it exercises is manifestly unreasonable as shown by the evidence of record." SAS, Inc. v. State Police Bureau of Liquor Control Enforcement, 638 A.2d 455, 458 n.6 (Pa. Cmwlth. 1994).

7

such substances because common pleas did not find that the drugs and cash were found in close proximity to each other. He maintains that, even if the presumption applies, it was rebutted by the lack of evidence that normally is present for establishing a substantial nexus between cash and illegal drug activity. Absent from this record, according to Falette, is evidence such as: traces of drugs on the money; a canine sniff of the money; that the money was bundled in a manner consistent with drug dealing; histories of drug crimes for the vehicle's occupants; or paraphernalia related to drug sales. He further points to the small amount of drugs found in the car that were for Lugo's personal use and not for sale. At most, Falette asserts, the Commonwealth established a suspicion that there was a nexus between the cash and illegal drug trafficking, which is insufficient to warrant forfeiture pursuant to Commonwealth v. Fontanez, 739 A.2d 152 (Pa. 1999), Burke, 49 A.3d at 549, and Commonwealth v. $15,000.00 U.S. Currency, 31 A.3d 768 (Pa. Cmwlth. 2011). Finally, Falette contends that, even if the Commonwealth met its burden, his unrebutted testimony established that he was an innocent owner pursuant Section 6802(j) of the Forfeiture Act, 42 Pa. C.S. § 6802(j).

The Commonwealth responds that it met its burden via the rebuttable presumption provision found at Section 6801(a)(6)(ii) of the Forfeiture Act, 42 Pa. C.S. § 6801(a)(6)(ii), and that Falette had to come forward with contrary evidence or face inevitable defeat. Commonwealth v. $259.00 U.S. Currency, 860 A.2d 228, 231 (Pa. Cmwlth. 2004). According to the Commonwealth, the cash was in close proximity to both the ecstasy pills recovered from the vehicle's front console and the marijuana stored in the rear passenger door. Having met its burden, the burden then shifted to Falette to establish that he is an innocent owner under the Forfeiture Act, which the Commonwealth asserts he did not because common pleas

8

found Falette's explanation "completely implausible." (Commonwealth's Br. at 17 (quoting Hr'g Tr. at 34-35, R.R. at 51a-52a).) Therefore, the Commonwealth maintains, common pleas' Order granting the Petition must be affirmed.

The Forfeiture Act authorizes the forfeiture of money that is "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act[8 (Drug Act)], and all proceeds traceable to such exchange." 42 Pa. C.S. § 6801(a)(6)(i)(A). Money that is "used or intended to be used to facilitate any violation of [the Drug Act]" is also subject to forfeiture. 42 Pa. C.S. § 6801(a)(6)(i)(B).

In a forfeiture proceeding involving money, the Commonwealth bears the burden of proving, by a preponderance of the evidence, that there is a substantial nexus between the money being forfeited and a violation of the Drug Act. Commonwealth v. $2,523.48 U.S. Currency, 649 A.2d 658, 660 (Pa. 1994). Under Section 6801(a)(6)(ii) of the Forfeiture Act, "money and negotiable instruments found in close proximity to controlled substances possessed in violation of [the Drug Act] *shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Drug Act]*." 42 Pa. C.S. § 6801(a)(6)(ii) (emphasis added). When the rebuttable presumption is triggered, "the Commonwealth satisfie[s] its evidentiary burden by using the presumption." $259.00 Cash U.S. Currency, 860 A.2d at 231. Once the Commonwealth establishes that the money is forfeitable, the burden shifts to the person claiming the money to establish that he owns the money, he lawfully acquired it, and the

_____

[8] Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §§ 780-101–780-144.

9

money was not unlawfully used by him, i.e., that he is an "innocent owner" of the money. 42 Pa. C.S. § 6802(j);[9] $2,523.48 U.S. Currency, 649 A.2d at 660.

In general, our Courts have held that cash found within arm's length of controlled substances is in sufficiently close proximity to trigger the rebuttable presumption. Commonwealth v. $6,425.00 Seized from Esquilin, 880 A.2d 523, 532 (Pa. 2005). In Esquilin, Esquilin was observed standing next to a cohort conducting drug sales and, when Esquilin was later arrested, the police recovered $6,425.00 on his person. Id. at 525-26. Although Esquilin was not the one making the drug sales, because Esquilin's cohort holding the drugs was "close enough to [Esquilin] that he could simply hand the cash over from the sales," our Supreme Court determined that the rebuttable presumption was triggered. Id. at 532 (quotation omitted); see also Commonwealth v. Porrino, 96 A.3d 1132, 1141 (Pa. Cmwlth. 2014) (noting that, in Esquilin, the cash was found in close proximity to the drugs such that the rebuttable presumption was triggered because, "Esquilin, who had no drugs on his person, was within arm's length of the person who did have drugs.").

---

[9] Section 6802(j) provides:

**Owner's burden of proof**.--At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under [S]ection 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. § 6802(j).

Here, it is undisputed that the $34,440.00 in cash was found within the passenger side B pillar of the vehicle driven by Lugo. (Hr'g Tr. at 14-15, R.R. at 31a-32a.) Specifically, the bags containing the cash were found underneath the plastic molding where the front passenger seatbelt bolts into the frame of the vehicle. (Hr'g Tr. at 14-15, R.R. at 31a-32a.) It is also undisputed that four tablets of ecstasy were found inside of the cigarette outlet in the center console area of the vehicle and four small plastic bags containing marijuana were found "in the right rear passenger door, underneath the cigarette ashtray." (Hr'g Tr. at 16, 18, R.R. at 33a, 35a.)

Based on Esquilin, the cash and drugs found in the vehicle were within sufficiently close proximity of each other to trigger the rebuttable presumption set forth in Section 6801(a)(6)(ii) of the Forfeiture Act. Here, both the marijuana and cash were located on the passenger side of the vehicle. Moreover, the cash, found in the area of the vehicle where the front passenger seatbelt is attached to the frame of the vehicle, was located across the passenger front seat from the ecstasy located in the center console. It is well-established that Courts may "'take judicial notice of matters of common knowledge.'" Kyu Son Yi, DVM v. State Board of Veterinary Medicine, 960 A.2d 864, 877 n.22 (Pa. Cmwlth. 2008) (quoting Ohio Bell Telephone Company v. Public Utilities Commission of Ohio, 301 U.S. 292, 301 (1937)). It is common knowledge that the area of the vehicle where the seatbelt is attached to the frame is within arm's length of both the right rear passenger door as well as the center console area of the vehicle. Because the cash was found within arm's length of both the ecstasy tablets and the marijuana, under

11

Esquilin, the Commonwealth satisfied its burden of demonstrating that the drugs and cash were in close proximity to each other.[10]

That Lugo was only charged with possession of a small amount of ecstasy and marijuana for personal use, rather than possession with intent to sell, is not relevant. Similarly irrelevant is the lack of evidence regarding how the $34,440.00 was bundled, that a drug dog alerted on the cash, or that placing the cash in the B pillar is a known means for drug dealers to hide their proceeds. Although such facts might have been relevant had the Section 6801(a)(6)(ii) presumption not been triggered, which would have required the Commonwealth to rely on *other* factors to meet its initial burden of proof, that is not the case here. Section 6801(a)(6)(ii) does not require, for the presumption to arise, someone be charged or convicted with possession with intent to sell, a particular quantity of controlled substances, a particular storage locale for the cash or controlled substances, or a particular manner for the money to be bundled.[11] All that it requires is that the "money [be] .

---

[10] The dissent contends that common pleas, in misstating the presumption set forth at Section 6801(a)(6)(ii), impermissibly expanded that presumption to create a broader range of activity to which the presumption would apply. In re $34,440.00, __ A.3d __, __ (Pa. Cmwlth., 1021 C.D. 2014, filed April 19, 2016), slip op. at 8-9, 11 (Leavitt, J., dissenting). Our reading of common pleas' Order is that its use of the phrase "related to drug trafficking" instead of "derived from the selling of a controlled substance," (Order, May 15, 2014), was merely the use of imprecise language and not intended to expand the presumption.

[11] The dissent further posits that, in order for the presumption to remain valid, there must be a charge of or conviction for possession with intent to sell; however, this conclusion is inconsistent with this Court's decision in $259.00 Cash U.S. Currency. In that case, this Court affirmed the forfeiture of $259 found in close proximity to a ten-dollar "a packet of heroin." $259.00 Cash U.S. Currency, 860 A.2d at 228, 229 n.1. The petitioner was arrested for possession of a controlled substance, a charge to which he pleaded guilty, but was not arrested or charged with possession with intent to deliver. Id. at 229. Although the petitioner attempted to prove that the money was derived from legal means, common pleas granted the forfeiture. We affirmed, agreeing with the Commonwealth that it had met its burden of proof via the rebuttable presumption and noting that "[i]t is not necessary . . . that a forfeiture be supported by an

*(Continued…)*

12

. . found in close proximity to controlled substances possessed in violation of [the Drug Act]." 42 Pa. C.S. § 6801(a)(6)(ii).[12] Moreover, the cases Falette relies

underlying criminal conviction." Id. at 231, 232 n.7. The Superior Court cases cited by the dissent are not binding on this Court, Wertz v. Chapman Township, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998), and this Court has taken the contrary position in $259.00 Cash U.S. Currency. Moreover, we observe that the Superior Court, in Commonwealth v. $15,836.85-Cash, 511 A.2d 871, 873 (Pa. Super. 1986), did not apply the presumption because it had been added to the statute after the seizure of the property had occurred and it was not clear that the trial court had relied on the presumption to grant forfeiture, rather than the evidence presented by the Commonwealth. Further, in Commonwealth v. Tate, 538 A.2d 903, 905-06 (Pa. Super. 1988), the Superior Court held that the appellant *rebutted* the presumption based on *the stipulated facts* that he "had borrowed $3,000 from the Central Bank in Cleveland and that the $1,950 in question was found in an envelope marked 'Central Bank' [which gave] rise to a reasonable inference that the money contained in the envelope was the balance left from the $3,000 cash advancement." The evidence here presented to rebut the presumption was Falette's testimony and evidence of the settlement checks, which common pleas found not credible for a variety of reasons. Although the dissent is correct that an adverse credibility determination does not constitute positive evidence that the money was derived from selling drugs, In re $34,440.00, __ A.3d at __, slip op. at 14-15 (Leavitt, J., dissenting), the presumption established that fact and it was Falette's burden to present evidence that would meet his burden under Section 6802(j) and rebut the presumption. He did not do so and, therefore, "suffer[ed] inevitable defeat." $259.00 Cash U.S. Currency, 860 A.2d at 232.

[12] The dissent cautions that we must both "'listen attentively to what the statute says . . . [and] what it does not say.'" In re $34,440.00, __ A.3d at __, slip op. at 8 (Leavitt, J., dissenting) (quoting Commonwealth v. Johnson, 26 A.3d 1078, 1090 (Pa. 2011) (quotation omitted)). In Johnson, our Supreme Court vacated the sentence of the appellant that had been enhanced based on his "possession" of multiple packets of heroin as a "co-conspirator" of the person who had actual possession of the heroin. Johnson, 26 A.3d at 1087-88. The Supreme Court examined the relevant statutory bases alleged for enhancing the appellant's mandatory minimum sentence and found that the Commonwealth could not rely on the conspiracy charge to impute possession on the appellant because "[n]owhere in th[e] list of crimes to which the minimum sentence applies upon conviction, however, did the legislature include a conviction of conspiracy" and "the legislature did not choose to include the offense of conspiracy in the list of enumerated criminal offenses to which 18 Pa. C.S.[] § 7508(a)(7)(i) applies upon conviction." Johnson, 26 A.3d at 1090-91. Here, Section 6801(a)(6)(ii) expressly states that "money . . . found in close proximity to controlled substances possessed in violation of [the Drug Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Drug Act]." 42 Pa. C.S. § 6801(a)(6)(ii). The legislature did not place any caveats on this provision. Thus, in

*(Continued…)*

upon, <u>Fontanez</u>, <u>Burke</u>, and <u>$15,000.00 U.S. Currency</u>, did not involve situations where the money was found in close proximity to any controlled substances; indeed, no drugs were found in those cases. <u>Fontanez</u>, 739 A.2d at 153-54; <u>Burke</u>, 49 A.3d at 544; <u>$15,000.00 U.S. Currency</u>, 31 A.3d at 770-71, 773. As such, they did not involve the presumption set forth in Section 6801(a)(6)(ii) and are inapt comparisons. Accordingly, the Commonwealth sufficiently established close proximity between the $34,440.00 and the drugs thereby triggering the statutory rebuttable presumption, and it had no obligation to present any more evidence. <u>$259.00 Cash U.S. Currency</u>, 860 A.2d at 232.

Once the Commonwealth satisfied its burden by using the presumption, the burden shifted to *Falette* to demonstrate that he was the owner of the cash, that he lawfully acquired the cash, and "[t]hat it was not unlawfully used or possessed by him." 42 Pa. C.S. § 6802(j)(3). Falette was required to present evidence that would rebut the presumption "or suffer inevitable defeat." <u>$259.00 Cash U.S. Currency</u>, 860 A.2d at 232. Falette, however, was unable to rebut the presumption. Falette testified that he was awarded the money in a lawsuit and that, after initially depositing the money in a bank, he withdrew the money in order to have cash on hand to impress his friends. However, as common pleas pointed out, Falette then hid the money in the vehicle driven by Lugo, which is contrary to his explanation that he wanted to have the cash handy to impress others. (Hr'g Tr. at 23-24, R.R. at 40a-41a.) On cross-examination, Falette stated that he did not tell Lugo that he hid the money in the vehicle. (Hr'g. Tr. at 24-25, R.R. at 41a-42a.) Common pleas did not find Falette's version of the events credible. As an appellate court,

---

affirming common pleas' Order, we are "listen[ing] attentively to what the statute says . . . [and] what it does not say," <u>Johnson</u>, 26 A.3d at 1090, and are applying it *as written*.

14

we cannot disturb credibility determinations or entertain challenges to the weight given to the evidence by common pleas. $259.00 Cash U.S. Currency, 860 A.2d at 232-33. Because common pleas found that Falette was not credible, Falette did not satisfy his burden of demonstrating that he lawfully acquired, possessed, and used the cash as required under Section 6802(j) of the Forfeiture Act, 42 Pa. C.S. § 6802(j).[13]

### III. Conclusion

Here, the Commonwealth presented credited evidence to establish that the $34,440.00 was in close proximity to the controlled substances in the vehicle thereby triggering the rebuttable presumption set forth in Section 6801(a)(6)(ii) of the Forfeiture Act. In so doing, the Commonwealth met its burden of proving a substantial nexus between the cash and unlawful activities under the Drug Act. Falette did not rebut that presumption with credited evidence. Accordingly, we affirm common pleas' Order.

_____

**RENÉE COHN JUBELIRER, Judge**

---

[13] Because we conclude that the Commonwealth met its burden of proof by utilizing the presumption set forth in Section 6801(a)(6)(ii), it is unnecessary to determine whether common pleas erred in admitting Trooper Felsman's testimony regarding I-80 being a "drug corridor." (Hr'g Tr. at 10, R.R. at 27a.) However, we note that common pleas did not refer to this testimony in its May 15, 2014 Order and indicated in its 1925(a) opinion that this testimony did not influence the decision to grant the Petition. Therefore, even if it was error, it was harmless.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
                                :
            v.                  :    No. 1021 C.D. 2014
                                :
$34,440.00 U.S. Currency        :
                                :
Appeal of: Rafael Falette       :

# O R D E R

NOW, April 19, 2016, the Order of the Court of Common Pleas of Monroe County entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1021 C.D. 2014 |
| | : | Submitted: December 9, 2015 |
| $34,440.00 U.S. Currency | : | |
| | : | |
| Appeal of: Rafael Falette | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge


DISSENTING OPINION
BY JUDGE LEAVITT                                    FILED:  April 19, 2016


          The Court of Common Pleas of Monroe County (trial court) mis-
stated and misapplied the rebuttable presumption set forth in the Controlled
Substances Forfeiture Act (Forfeiture Act)[1] to grant the Commonwealth's
forfeiture petition.    It also misstated the statutory ground for a forfeiture.
Accordingly, I respectfully dissent from the majority's decision to uphold the trial
court's decision.

          While driving his sister's vehicle on Interstate 80 in Monroe County,
Juan Lugo was pulled over for tailgating, an offense for which Lugo was not
charged.[2] Trooper Derek Felsman requested and received permission from Lugo to

_____

[1] 42 Pa. C.S. §§6801-6802.

[2] At the hearing, the district attorney noted that four of the last "five Commonwealth Court
opinions emanated from Monroe County," to which the trial court responded:
**(Footnote continued on the next page . . . )**

search the vehicle and found four pills in the front ashtray and four packets of marijuana in a rear ashtray.[3] Lugo admitted that the drugs belonged to him.

Buoyed by this success, Trooper Felsman next removed the plastic housing from the seatbelt attachment, where he found two black plastic bags containing cash.[4] Trooper Felsman reported that neither Lugo nor his three passengers knew the money was there, let alone how it got there or who owned it.

The Commonwealth's forfeiture petition recited that the Commonwealth had obtained "signed waivers denying any knowledge or ownership of the currency" from Lugo and his passengers. Forfeiture Petition, ¶7, I. In his verified answer, Lugo confirmed that he was not "the owner of the currency seized from his vehicle on August 7, 2009" or that it was ever "in [his]

---

**(continued . . . )**

> I keep hoping that these troopers are going to start making the stops over the county line, let Luzerne or Wayne start making these decisions ... or Lackawanna.

Reproduced Record at 50a-51a (R.R. ___). The cases referred to are *Commonwealth v. $17,182.00 U.S. Currency*, 42 A.3d 1217 (Pa. Cmwlth. 2012); *Commonwealth v. Burke*, 49 A.3d 542 (Pa. Cmwlth. 2012); and *Commonwealth v. $15,000 U.S. Currency*, 31 A.3d 768 (Pa. Cmwlth. 2011). These three cases originated in Monroe County, on Interstate 80, with stops made by Trooper Mark Conrad. All three involved vehicles operated by young males from urban areas in New York and New Jersey. As here, not a single driver was cited for a traffic violation. Likewise, here, Lugo and his young companions hailed from Passaic, New Jersey, one of the densest urban areas in the country with Hispanics and Latinos making up 71.02% of the population. https://en.wikipedia.org/wiki/Passaic,__New__Jersey (last visited March 18, 2016). One hopes the State Police also train their vigilance on tailgating offenses committed by college coeds on their way to a sorority conference in a Volvo station wagon that is registered to a Short Hills, New Jersey address.

[3] When permission to search a vehicle is not granted by the vehicle's operator, the State Police respond by impounding the vehicle. *See, e.g., $17,182.00 U.S. Currency*, 42 A.3d at 1218.

[4] At the State Police barracks, the money was counted and found to total "$34,440 in numerous denominations of hundred dollar, fifty dollar and twenty dollar bills." R.R. 32a-33a. Packaging by denomination suggests packaging by bank wrappers. Trooper Felsman did not say that arranging cash by denomination and placing it in plastic bags conformed to the styles preferred by drug dealers.

MHL-2

possession." Answer, ¶¶5, 6. Lugo denied that he was tailgating when stopped. Answer, ¶7, a. Finally, Lugo denied knowledge of the cash; that it was going to be used to purchase drugs; or that it was the "fruits of such an exchange." *Id*., ¶8.

In his verified answer to the forfeiture petition, Rafael Falette claimed ownership of the seized cash. Attached to his answer were two checks. The first check, dated June 17, 2009, was in the amount of $14,496.22, and the second check, dated July 16, 2009, was in the amount of $23,303.33. Answer, Exhibits 1 and 2. The checks were drawn on the account of a law firm, Corradino & Papa, LLC, with the notation "Settlement Proceeds to Client." The checks, which represented the proceeds of Falette's settlement of a personal injury lawsuit, were issued within weeks of the August 7, 2009, vehicle stop.

At the April 17, 2014, hearing, Falette testified that upon receiving his settlement of $37,799.55, he quickly spent a substantial amount. Thereafter, he decided to "stash" the remainder, *i.e.*, $34,440, inside the B pillar of the vehicle in question, which belonged to Lugo's sister and which Falette regularly borrowed. Reproduced Record at 45a. Falette stated that he did not know that Lugo would so quickly borrow his sister's vehicle to go tailgating in Pennsylvania. Falette acknowledged that he exercised extreme poor judgment in hiding his cash in the B pillar of his friend's vehicle. Falette attributed this lapse to his youth; he was 23 years old at the time.

The Commonwealth presented no evidence to refute Falette's case. It did not challenge Falette's answer to the forfeiture petition, *i.e.*, that Falette had received $37,799.55 in a settlement of a tort claim, a matter easily investigated. It did not present any evidence to refute Falette's testimony.

The trial court took the matter under advisement. One month later it granted the forfeiture petition, holding that the Commonwealth established a "nexus between the seized currency and unlawful activity." Trial Court op., May 15, 2014, at 1.[5] It explained its holding as follows:

> Pursuant to the reasoning set forth in *Commonwealth v. Burke*, 49 A.3d 542 (Pa. Cmwlth. 2012), the Commonwealth has sufficiently established *a nexus between the seized currency and unlawful activity* based on the following factors: (1) presence of drugs in close proximity to the currency at the time of the stop which creates *a rebuttable presumption that it is related to drug trafficking*, (2) inconsistent statements made by the vehicle occupants' [sic] as well as their unusual behavior at the time of the stop, including the back passengers who were pretending to be asleep during the stop, (3) the drivers' [sic] drug-related conviction as a result of the stop, (4) the placement of the currency in the B Pillar of the car, an area which was not intended for use by the manufacturer, (5) the packaging of the money in two black plastic bags, and (6) the fact that the car was registered to a third party.

*Id.* (emphasis added). The trial court rejected Falette's testimony as incredible.

Falette argues that the Commonwealth did not make a *prima facie* case that the $34,440 represents the proceeds of drug sales, with or without the presumption. Lugo was charged and convicted of possession of marijuana for personal use, in an amount too small to authorize the forfeiture of the vehicle Lugo used to engage in "tailgating." Lugo's drug offense has been adjudicated, and it is a matter of court record that he possessed but did not sell marijuana. Accordingly, the statutory presumption that the cash was derived from the selling of controlled

---

[5] Generic "unlawful activity" is not a ground for forfeiture authorized by the legislature. It is one specific unlawful activity that must be shown, *i.e.*, the sale or purchase of controlled substances. 42 Pa. C.S. §6801(a)(6)(i).

substances was unavailing.  Falette argues that the Commonwealth established, at most, a suspicion that the cash was in some way related to a drug offense, and a suspicion does not warrant a forfeiture.[6]

## Forfeiture Act

The Forfeiture Act abolishes any property right in cash used to purchase or sell contraband drugs.  The Forfeiture Act states, in relevant part, as follows:

> (a)  Forfeitures generally.---The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

> \*\*\*

> (6)(i)  All of the following:

>> (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act,[7] and *all proceeds traceable to such an exchange*.

---

[6] Falette has not challenged the forfeiture of the $34,440 as unconstitutional under the Eighth Amendment of the U.S. Constitution or Article I, Section 13 of the Pennsylvania Constitution, which protects citizens against excessive fines.  For a civil forfeiture to be constitutional under the Eighth Amendment, the government must show that the property to be forfeited was the instrumentality of the drug offense.  *Austin v. United States,* 509 U.S. 602, 621-22 (1993).  The amount of the forfeiture must not be disproportional to the gravity of the defendant's offense. *United States v. Bajakajian,* 524 U.S. 321, 336-37 (1998).

The Commonwealth did not show that the $34,440 was the instrumentality of Lugo's drug offense or that this forfeiture is in any way a punishment proportional to Lugo's drug offense. *See Commonwealth v. 1997 Chevrolet,* 106 A.3d 836 (Pa. Cmwlth. 2014), *petition for allowance of appeal granted*, 120 A.3d 993 (Pa. 2015).  Lugo paid a fine of $105 and was sentenced to 15 to 30 days in prison.

[7] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

42 Pa. C.S. §6801(a)(6)(i)(A) (emphasis added).  The statute creates a rebuttable presumption that cash found in close proximity to illegal drugs is "proceeds traceable to such an exchange."  It states, in relevant part, as follows:

> Such *money* and negotiable instruments *found in close proximity to controlled substances* possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act *shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance* in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa. C.S. §6801(a)(6)(ii) (emphasis added).

In a forfeiture proceeding, the Commonwealth bears the burden of proof.  *Commonwealth v. $6,425.00 Seized From Esquilin*, 880 A.2d 523, 529 (Pa. 2005).  The courts often recite that the Commonwealth's evidence must prove a "substantial nexus" to an illegal drug purchase or sale.  "Substantial nexus" is not a phrase that anywhere appears in the Forfeiture Act.  The statutory ground for forfeiture is *proof* that the forfeitable property was used to purchase drugs, was realized from the sale of drugs or in some way directly facilitated the purchase or sale of drugs.  42 Pa. C.S. §6801(a)(6)(i).[8]  "Substantial nexus" identifies the

---

[8] It states, in relevant part, as follows:

> (a)  Forfeitures generally.---The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
>                 ***
>
> (6)(i)  All of the following:
>
> > (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

**(Footnote continued on the next page . . . )**

quality and quantity of evidence needed to satisfy one of the statutory bases for forfeiture. This evidence must be "substantial," *i.e.*, such that it shows more than a "suspicion" of a nexus between cash and an illegal drug activity. *Commonwealth v. Marshall*, 698 A.2d 576, 579 (Pa. 1997). Where the Commonwealth makes a *prima facie* case, the burden shifts to the person claiming the cash. The claimant must prove that he owns the cash; that he lawfully acquired it; and that it was not unlawfully used by him. 42 Pa. C.S. §6802(j).[9]

As nature abhors a vacuum, so the law abhors the forfeiture of a citizen's property. The United States Supreme Court has put it succinctly: "Forfeitures are not favored; they should be enforced only when within both [the]

---

**(continued . . . )**

> (B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa. C.S. §§6801(a)(6)(i)(A), (B).

[9] Section 6802(j) of the Forfeiture Act states:

> (j) Owner's burden of proof.--At the time of the hearing, *if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture* under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:
>
> > (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
> >
> > (2) That the claimant lawfully acquired the property.
> >
> > (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. §6802(j) (emphasis added).

letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939). Our Supreme Court has likewise directed that the Forfeiture Act "is to be strictly construed." *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 661 (Pa. 1994). Relevant to the construction of the rebuttable presumption at issue here is the Supreme Court's directive that

> [a]s a matter of statutory interpretation, although one is admonished to listen attentively to what the statute says; one must also listen attentively to what it does not say.

*Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011) (quotation omitted).

## Analysis

The statutory presumption in Section 6801(a)(6)(ii) is specific and limited: cash found in close proximity to drugs will be "presumed to be *proceeds derived from the selling* of a controlled substance." 42 Pa. C.S. §6801(a)(6)(ii) (emphasis added). This presumption does not establish the facts needed to authorize a forfeiture under the other two statutory grounds.[10] The trial court incorrectly stated that the statutory presumption established that the seized cash "is related to drug trafficking." Trial Court op., May 15, 2014, at 1. The trial court converted a narrowly tailored presumption into a broad and loosely fitting one that, when invoked, will establish some kind of drug activity. This is not a strict

---

[10] Section 6801(a)(6)(ii) does *not* state that cash found in close proximity to drugs will be presumed to have *facilitated* an illegal drug transaction, 42 Pa. C.S. §6801(a)(6)(i)(B), or to have been *furnished for the purchase* of a controlled substance, 42 Pa. C.S. §6801(a)(6)(i)(A). Section 6801(a)(6)(ii) does *not* state that currency found in close proximity to controlled substances is presumed to be related to drug trafficking in some, but not specified, way. Finally, Section 6801(a)(6)(ii) does *not* state that where the Commonwealth's evidence shows a close proximity between seized currency and controlled substances, it has established a *prima facie* case for forfeiture under Section 6801(a)(6)(i).

construction of the statute, and this construction does not "listen attentively to what [the statute] does not say." *Johnson*, 26 A.3d at 1090.

Presumptions are "the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." *Mackowik v. Kansas City, St. J. & C.B.R. Co.*, 94 S.W. 256, 262 (Mo. 1906). A presumption is rebutted by "actual facts." *Gardner v. Gardner*, 35 A. 558 (Pa. 1896). It is immaterial which source offers evidence that rebuts a presumption. *Normandin v. Parenteau*, 150 A. 460, 461 (R.I. 1930). As one court has explained:

> Where a plaintiff's "prima facie" case vitally depends upon a rebuttable presumption, which is destroyed, then, too, must the "prima facie" case collapse with the presumption…. Once the presumption is destroyed it is no longer a question of plaintiff's prima facie case versus defendant's affirmative defense, but rather has plaintiff made out a continuing prima facie case at all.

*O'Brien v. Equitable Life Assurance Society of United States*, 212 F.2d 383, 387 (8th Cir. 1954).

The Forfeiture Act's statutory presumption may assist the Commonwealth in making a *prima facie* case, but it is not the end game. The Superior Court has explained as follows:

> With or without the presumption, however, the Commonwealth must prove by a preponderance of the evidence that the money was derived from illegal drug transactions.

*Commonwealth v. $15,836.85-Cash*, 511 A.2d 871, 873 (Pa. Super. 1986).[11]

*Commonwealth v. Tate*, 538 A.2d 903 (Pa. Super. 1988), is also instructive. In that case, the Commonwealth invoked the presumption because Tate's briefcase contained $1,950 in cash and a quarter pound of cocaine. The Superior Court held that two items in a briefcase constituted close proximity, giving the Commonwealth grounds to invoke the statutory presumption.[12]

However, in *Tate*, the presumption did not make the Commonwealth's *prima facie* case. The Superior Court concluded that the Commonwealth's other evidence rebutted the presumption that the $1,950 represented "the proceeds derived from the selling of a controlled substance." 42 Pa. C.S. §6801(a)(6)(ii). This was because the evidence showed that the $1,950 came from Tate's bank account. Further, the Commonwealth presented no evidence that Tate had sold the

---

[11] The Superior Court referred to a 1984 version of the Forfeiture Act, *i.e.*, Section 28(a)(6)(ii) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-128(a)(6)(ii). The Act of June 30, 1988, P.L. 464, repealed Section 28 and made its provisions part of Title 42 of the Consolidated Statutes. 42 Pa. C.S. §6801(a)(6)(ii) is identical to the language of former Section 28(a)(6)(ii) of the Controlled Substance, Drug, Device and Cosmetic Act.

[12] The trial court did not explain why the drugs and cash were "in close proximity" to each other. "Close proximity" is not defined, but it is more exacting than "proximity." Cash found in the pocket of the "money man," Esquilin, standing next to his drug dealing cohort was found to be in close proximity to drugs; police watched Esquilin pocket the cash passed to him by the drug dealer. *Esquilin*, 880 A.2d at 532. Close proximity has been found where a packet of heroin and $259 in cash were found in an individual's pockets. *Commonwealth v. $259.00 Cash U.S. Currency*, 860 A.2d 228, 231 (Pa. Cmwlth. 2004). As far as can be determined, the presumption has been applied only in circumstances where police have observed illegal drug transactions.

Cash in the amount of $12,000 found under the passenger's seat was held *not* to be in close proximity to illegal drugs found in the driver's side pocket. *Commonwealth v. One 1973 Mercedes Benz Sedan*, 9 Pa. D.&C. 4th 332 (1990). In order for any drug exchange to take place, logically, both items used in the exchange need to be accessible. In this case, the $34,440 was not readily available to any of the occupants of the vehicle. The trial court specifically noted that the cash was not "easily accessible." Trial Court op., May 15, 2014, at 2.

drugs found in his briefcase. Accordingly, it held that the presumption was rebutted.[13]

In sum, the statutory presumption may be rebutted by record evidence relating to the specific fact of whether the seized currency represents the proceeds of a drug exchange. If the presumption is rebutted, as in *Tate*, it provides no assistance to the Commonwealth. *O'Brien*, 212 F.2d at 387.

The trial court misstated the language of the Forfeiture Act. It stated that the presumption establishes an unspecified kind of "drug trafficking," but the presumption speaks to one kind of drug offense: the *sale* of illegal drugs. The trial court stated that because the Commonwealth demonstrated "a nexus ... to unlawful activity," the cash could be forfeited. "Unlawful activity" is not a statutory ground for forfeiture. The trial court's deviations from the actual language of the Forfeiture Act are excused by the majority as mere imprecision. Majority slip op. at 12 n.10. "Imprecision" is not consistent with a strict construction of a statute.

Likewise, the majority does not address the adjudicated fact that Lugo possessed controlled substances for personal use and was not the owner of the cash. According to the majority, this evidence is "irrelevant." Majority slip op. at 12. It believes that the only way to rebut the statutory presumption is by the innocent owner defense.[14] Respectfully, I must disagree.

---

[13] The Superior Court ultimately ordered forfeiture of the $1,950. It found that the $1,950 represented Tate's change from cash he used to purchase a plane ticket to Florida to buy drugs. The Superior Court found that the $1,950 remainder facilitated a violation of the Controlled Substance, Drug, Device and Cosmetic Act.

[14] There are two problems with this understanding of the statutory presumption. First, it means that the presumption, in itself, makes a *prima facie* case. Second, it makes the statutory presumption effectively irrebuttable. Even where the claimant of the cash presents documentary **(Footnote continued on the next page . . . )**

MHL-11

The Commonwealth's forfeiture petition stated that Lugo was charged with "Possession of a Small Amount of Controlled Substance, Personal Use." Forfeiture Petition, ¶7, J. Its petition also stated that Lugo was not the owner of the cash. *Id*. at ¶7, I. As in *Tate*, the record evidence rebutted the presumption that Lugo amassed the $34,440 by selling drugs.

The record does so in two ways. First, Lugo, the owner of the drugs, was not the owner of the currency, according to Trooper Felsman's testimony, the forfeiture petition and Lugo's verified answer. The Commonwealth presented no evidence to connect Lugo to the cash, such as fingerprints. Second, it has been adjudicated that Lugo possessed, not sold, drugs.

Taking away the presumption, the Commonwealth's other evidence was inadequate to warrant a forfeiture. The trial court recited, in conclusory fashion, a list of factors that have been used to support a forfeiture. However, some of these recited factors have no support in the record, and others lack any probative value.

The trial court noted "unusual behavior," such as the passengers "pretending" to be asleep during the traffic stop; cash stored in a place not intended for that use by the car's manufacturer; packaging of cash in black plastic bags; and the fact that the vehicle was not registered to the driver. Trial Court op., May 15, 2014, at 1. The trial court also stated that the occupants of the vehicle made "inconsistent statements." *Id.*

---

**(continued . . . )**
evidence to show that the cash was obtained lawfully, his testimony will be rejected as incredible. *See, e.g., Burke*, 49 A.3d at 545 (where claimant produced pay stubs, insurance payments and bank withdrawal slips).

First, the trial court did not identify the inconsistencies in the passengers' statements, and Trooper Felsman's testimony did not report any. Second, the Commonwealth offered no evidence that drug dealers are known to secret the proceeds of their drug sales in the B Pillar of a vehicle.[15] Third, the Commonwealth showed the cash was organized by denomination but not how it was packaged, *i.e.*, in bank wrappers or rubber bands. The difficulty of squeezing a large amount of cash into a small space suggests that the cash was in bank wrappers. The color of and material of the bag holding the cash is meaningless, as is the "unusual behavior" of Lugo's passengers.

To be sure, $34,440 in cash is a large amount, but "it is not against the law to carry cash." *Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379, 388 (Pa. Cmwlth. 2010). What is more, "[t]here is no presumption that a 'large amount' of cash signifies that it was derived from drug trafficking." *Commonwealth v. Porrino*, 96 A.3d 1132, 1141 (Pa. Cmwlth. 2014). As in *Tate*, the question is whether the Commonwealth's evidence was sufficient to establish its *prima facie* case for forfeiture without the presumption.

The trial court stated that it used the multi-factor test followed in *Burke,* 49 A.3d 542. Dispositive in *Burke* was Burke's criminal drug history and the fact that the cash was secreted with drug paraphernalia. These facts are lacking

---

[15] It is both innocent and logical to hide cash. *See, e.g., Marshall*, 698 A.2d at 579 (fact that cash was secreted in the back seat did not support a forfeiture); *Commonwealth v. $15,000 U.S. Currency*, 31 A.3d 768 (Pa. Cmwlth. 2011) (fact that cash was hidden under back seat did not support a forfeiture).

here.[16]  Given the disconnect between the amount of cash claimed by Falette and the very small amount of drugs seized from Lugo, the evidence establishes, at best, a "suspicion of a nexus."  *See Marshall*, 698 A.2d 576; *Commonwealth v. Fontanez*, 739 A.2d 152 (Pa. 1999); *Commonwealth v. $17,182.00 U.S. Currency*, 42 A.3d 1217 (Pa. Cmwlth. 2012); *$15,000 U.S. Currency*, 31 A.3d 768; and *$9,000 U.S. Currency*, 8 A.3d 379.

This leaves the question of Falette's testimony and the significance of the trial court's decision not to find it credible.  Thomas Hardy once observed, "[t]hough a good deal is too strange to be believed, nothing is too strange to have happened."[17]  The trial court's credibility determination is binding upon appellate review.  However, it is significant only to the innocent owner defense, not to the Commonwealth's burden to make a *prima facie* case.  An adverse credibility finding does not constitute positive evidence of the contrary, *i.e.*, that Falette intended his cash to be used for some kind of illegal drug activity.  *See Yi v. State*

---

[16] In *Burke*, this Court reviewed the factors on which the trial court relied to order a forfeiture: (1) Burke's conflicting statements about the cash; (2) the large amount of cash; (3) the manner by which the cash was packaged; (4) a drug dog alerted on the cash; (5) the presence of drug paraphernalia next to the money; (6) Burke's summary criminal conviction for possession of drug paraphernalia; (7) Burke's drug-related criminal history and that of his passenger; (8) Burke's recent arrest for drug distribution and weapons possession; (9) Burke's admission to using marijuana; and (10) the side-by-side placement of the cash and scale in the center console. This Court concluded that the first four factors were not relevant; at best, they raised a suspicion. However, the other factors – Burke's prior drug use and particularly "the presence of drug paraphernalia secreted next to the money and [Burke's] conviction for its possession" – supported the forfeiture. *Burke*, 49 A.3d at 550.  Here, Lugo did not have a drug history, and the drugs were not secreted next to the cash.  Neither Falette nor any of Lugo's passengers have a drug history.

[17] *Thomas Hardy Quotes*, GOODREADS, http://www.goodreads.com/author/quotes/15905 (last visited March 21, 2016).

*Board of Veterinary Medicine*, 960 A.2d 864, 875 (Pa. Cmwlth. 2008).[18] Because the Commonwealth did not establish a *prima facie* case for forfeiture, the burden did not shift to Falette, and the trial court's rejection of his testimony is of no moment.

The Commonwealth chose to present a minimalist case that consisted of a large amount of cash, $34,440, hidden in a B Pillar, and a minute quantity of drugs not for sale. The trial court concluded that this evidence proved "a nexus between the seized currency and unlawful activity." Trial Court op. at 1. Any kind of "unlawful activity" is not a statutory ground for a forfeiture. Further, the trial court did not find that the seized cash was the "proceeds derived from the selling of a controlled substance," and this factual finding was necessary before it could order the forfeiture. 42 Pa. C.S. §680(a)(6)(ii). The disconnect between the language of the Forfeiture Act and the trial court opinion require, at a minimum, a remand for new findings and clarification.

**Conclusion**

The purpose of forfeiture is to make unavailable "the instrumentalities used to facilitate criminal activity and thus attempts to prevent future criminal activity." Barclay Thomas Johnson, *Restoring Civility – the Civil Asset Forfeiture Reform Act of 2000: Baby Steps Towards a More Civilized Civil Forfeiture System*, 35 IND. L. REV. 1045, 1068 (2002). The Commonwealth's successful forfeiture will not impede Lugo's ability to repeat his offense of possessing a small amount

---

[18] *See also Base Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) (noting that "discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.").

MHL-15

of marijuana for personal use. Nor will it improve compliance with the Vehicle Code. So long as the Commonwealth can present weak and inadequate circumstantial evidence to gain title to cash seized during a vehicle stop, it has every incentive to troll for cash by using traffic stops for minor, or phantom, infractions of the Vehicle Code.

I would reverse the trial court's grant of the forfeiture of the $34,440 in U.S. Currency.

_____
MARY HANNAH LEAVITT, Judge


President Judge Pellegrini joins in the dissent.

MHL-16