Commonwealth of Pennsylvania    :
    :   No. 93 C.D. 2017
    v.    :
    :   Submitted: September 22, 2017
$1694.00 US Currency/Coin    :
    :
Appeal of: Marc S. Bates    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH            FILED: November 29, 2017


Marc S. Bates (Bates) appeals, *pro se*, from the November 9, 2016 order of the Court of Common Pleas of Lebanon County (trial court), granting in part and denying in part a petition for forfeiture filed by the Commonwealth of Pennsylvania (Commonwealth). More specifically, the trial court granted the Commonwealth's forfeiture petition with respect to $1,112.00 in cash seized from Bates' residence, but denied said petition as to $582.00 in cash seized from Bates' person and directed these monies be returned to Bates.


**Facts and Procedural History**

On August 29, 2014, Sergeant Brett Hopkins of the Lebanon County Drug Task Force (Drug Task Force) made an undercover purchase of crack cocaine from

Bates. Subsequent to that purchase, a felony warrant was issued for Bates' arrest. On October 24, 2014, while on duty with the Drug Task Force, Detective Lawrence Minnich observed Bates standing at the corner of Fourth and Lehman Streets in the city of Lebanon. Detective Minnich, aware of the felony warrant, approached Bates and placed him under arrest. A pat down of Bates discovered $582.00 in cash in his pocket. Bates thereafter consented to a search of his residence. After proceeding to the residence, Detective Minnich initiated a search. During this search, Detective Minnich found a plastic baggy containing marijuana on top of a kitchen cabinet, a box of plastic sandwich bags, a cell phone, and a digital scale by a spice rack near the kitchen stove. In the living room area, Detective Minnich discovered a sandwich bag containing ten Oxycodone tablets and a folded stack of cash totaling $1,112.00 between DVDs on a shelving unit. (Trial court op. at 2-3.)

Following a criminal jury trial with respect to the sale of crack cocaine to an undercover officer, Bates was found guilty of the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance. In a related criminal bench trial regarding the items seized from his residence, Bates pleaded guilty to intentional possession of a controlled substance by a person not registered and possession of a small amount of marijuana for personal use.[1]

On December 12, 2014, the Commonwealth filed a petition for forfeiture of the entire $1,694.00 in cash recovered from Bates' person and his residence pursuant to section 6801 of what was commonly referred to as the Forfeiture Act, 42 Pa.C.S. §6801.[2] Bates later filed a petition for return of property, but said petition was denied

---

[1] A charge of use/possession of drug paraphernalia was nolle prossed.

[2] The Forfeiture Act has since been repealed by Act 13 of 2017 (S.B. 8), P.L. 247, approved June 29, 2017, and effective as of July 1, 2017. Similar provisions are now found in sections 5801-

2

by order of the trial court dated June 9, 2016, without prejudice in light of the pending forfeiture action. The trial court conducted a hearing with respect to the Commonwealth's forfeiture petition on September 1, 2016. (Trial court op. at 1.)

At this hearing, Detective Minnich testified as to the facts above regarding Bates' arrest, the search of his residence, and the items and cash recovered during the same. Detective Minnich explained that the digital scale and packaging bags had significance in his experience, as these items are commonly used in the sale and distribution of controlled substances. Detective Minnich noted that no contraband was located on Bates' person. Detective Minnich then identified photos of the items and cash recovered at the scene, and these photos were admitted into evidence without objection. Detective Minnich also identified a laboratory report from the Pennsylvania State Police Bureau of Forensic Services which confirmed that the seized substances were in fact marijuana and Oxycodone pills. Again, this exhibit was admitted without objection. Detective Minnich was then questioned regarding Bates' employment status/history. Detective Minnich stated that he understood that Bates worked periodically at a barbershop. (Notes of Testimony (N.T.), 9/1/16, at 7-15.)

On cross-examination, Detective Minnich acknowledged that no crack cocaine was found on Bates' person at the time of his arrest and that he was arrested in front of the barbershop where he worked periodically. Detective Minnich only recalled finding the $582.00 on Bates' person. Detective Minnich also acknowledged that no crack cocaine was found in Bates' residence following his consent to search, and that neither the scale nor sandwich bags were tested for drug residue. When questioned as to how he connected the money in Bates' residence to drug sales, Detective Minnich

---

5808 of the Judicial Code, 42 Pa.C.S. §§5801-5808. However, for purposes of this appeal, we will rely on the provisions of the Forfeiture Act in effect at the time the Commonwealth filed its forfeiture petition.

3

responded that it was due to his knowledge of Bates' prior activity (presumably the sale to an undercover officer) and the items located inside the residence. (N.T., 9/1/16, at 15-24.)

On re-direct examination, Detective Minnich testified that the Oxycodone tablets were not in a proper medication bottle and that each pill had a street value of $10.00 to $15.00. He also stated that there was no visual residue on the scale recovered inside the residence and the sandwich bags were new in the box; hence, there was no reason to send them out for testing. (N.T., 9/1/16, at 24-26.) The Commonwealth thereafter entered into evidence, without objection, several documents relating to Bates' criminal charges and conviction relating to the undercover drug sale. (N.T., 9/1/16, at 28-30.)

Bates then testified on his own behalf, noting that the money found on his person at the time of his arrest were proceeds from his job at the barbershop. Bates stated that he voluntarily consented to a search of his residence, which only revealed a small amount of marijuana and pills. Bates insisted that officers confiscated money in his bedroom that represented proceeds from his late father's estate. Bates denied that the money was related to any illegal drug sales. On cross-examination, Bates acknowledged that he could produce no documentation, pay stubs, or tax records to account for his earnings from the barbershop. However, Bates explained that the barbershop is a cash business. When asked if he had proof regarding his purported receipt of settlement monies from his late father's estate, he conceded he did not and asserted that the burden was on the Commonwealth to prove that he obtained the money illegally. (N.T., 9/1/16, at 30-37.)

The Commonwealth then recalled Detective Minnich, who specifically denied finding any money in the bedroom of Bates' residence. In fact, Detective

4

Minnich denied that there was any discussion regarding an inheritance during the search of Bates' residence. Detective Minnich noted that there had been times previously where monies were returned after an individual established a legitimate source for the same. Detective Minnich also noted that he was familiar with antique monies, and no such monies were found in the residence. On cross-examination, Detective Minnich stated that he personally conducted the search of Bates' bedroom and found no monies therein. (N.T., 9/1/16, at 38-41.)

By order dated November 9, 2016, the trial court granted in part and denied in part the Commonwealth's forfeiture petition. The trial court granted said petition as to the $1,112.00 in cash found in Bates' residence, but denied said petition as to the $582.00 retrieved from Bates' person at the time of his arrest. The trial court directed that the latter monies be returned to Bates. Bates subsequently filed a notice of appeal with the trial court.[3]

After Bates filed a statement of errors complained of on appeal, the trial court issued an opinion in support of its order. The trial court explained that because the $1,112.00 in cash retrieved from Bates' residence was located next to the baggy that contained the ten Oxycodone tablets, there was a presumption that the money represented proceeds derived from the sale of a controlled substance. The trial court also noted the drug paraphernalia found in the residence, which indicated the sale of controlled substances. Based upon this evidence, the trial court concluded that the Commonwealth had sustained its initial burden of establishing a drug nexus by a preponderance of the evidence. The trial court noted that Bates failed to overcome this presumption because he was unable to produce any documentation to support his

---

[3] Bates originally appealed to our Superior Court. However, by order filed January 25, 2017, the Superior Court transferred the appeal to this Court.

5

contention that the money in his residence was an inheritance from his late father's estate. The trial court credited Detective Minnich's testimony that no money was found in Bates' bedroom and that no antique monies were found in the residence. With respect to the $582.00 in cash retrieved from Bates' person at the time of his arrest, the trial court noted that no controlled substances or other contraband was found on Bates' person at that time and he established that he obtained this money in a lawful manner, i.e., from his work at the barbershop.

## Discussion

On appeal to this Court,[4] Bates argues that the trial court erred in: (1) failing to reject an untimely brief filed by the Commonwealth; (2) concluding that the Commonwealth established, by a preponderance of evidence, a sufficient nexus between the money seized and any criminal activity; (3) failing to conclude that the Commonwealth did not present evidence of the seized items; (4) failing to conclude that the Commonwealth did not present an accurate count of the amount of money retrieved from his residence; and (5) failing to direct the Commonwealth to return all of his property.

## Untimely Brief

Bates first argues that the trial court erred in failing to reject an untimely brief filed by the Commonwealth below. More specifically, Bates states that the parties had 30 days from the date the transcript was lodged to file their respective briefs, and because the transcript was lodged on September 20, 2016, the parties' briefs were due

---

[4] Our scope of review is limited to determining whether the trial court findings are supported by substantial evidence and whether it abused its discretion or committed an error of law. *Commonwealth v. Smothers*, 920 A.2d 922, 924 n.2 (Pa. Cmwlth. 2007).

on or before October 20, 2016. However, Bates notes that the Commonwealth did not file a brief until October 21, 2016. Bates avers that the Commonwealth's failure to file a timely brief precludes the Commonwealth from making any claim to his monies. We disagree.

While the trial court confirmed in its opinion that the Commonwealth's brief was filed one day late, the trial court correctly notes that it had the discretion to accept and consider briefs which are filed late, especially if the other party has not shown any specific prejudice as a result of the late filing. *See* Pa.R.C.P. No. 126; *In re Appeal of Lynch Community Homes, Inc.*, 522 A.2d 716 (Pa. Cmwlth. 1987). Pa.R.C.P. No. 126 provides that:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

In *In re Appeal of Lynch Community Homes, Inc.*, we explained that "procedural rules are not to be exalted, but are means to an end and, therefore, must be consistent with the dictates of justice." *Id.* at 718 (citing *Feingold v. Southeastern Pennsylvania Transportation Authority*, 517 A.2d 1270, 1272 (Pa. 1986)). We further noted the trial court's discretion in such matters and described our review as to whether the trial court abused the same. We agree with the trial court herein that Bates has not shown any specific prejudice resulting from the Commonwealth's filing of its brief one day late and we cannot conclude that the trial court abused its discretion in accepting and considering the same.

7

**Sufficient Nexus and Failure to Return Bates' Property**

Bates next argues that the trial court erred in concluding that the Commonwealth established, by a preponderance of evidence, a sufficient nexus between the money seized and any criminal activity. Again, we disagree.

Section 6801(a)(6)(i)(B) of the Forfeiture Act provided that "[m]oney . . . used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act[5]" was subject to forfeiture. 42 Pa.C.S. §6801(a)(6)(i)(B). The burden on the Commonwealth in a forfeiture proceeding is to establish, by a preponderance of the evidence, i.e., more likely than not, that there is a substantial nexus between unlawful drug activity and the money sought to be forfeited. *Commonwealth v. $34,440.00 United States Currency*, 138 A.3d 102, 108 (Pa. Cmwlth. 2016). Importantly, when money is found in close proximity to illegal controlled substances, section 6801(a)(6)(ii) of the Forfeiture Act established a rebuttable presumption that the money is related to drug trafficking. 42 Pa.C.S. §6801(a)(6)(ii) ("Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act.")

Thereafter, if the Commonwealth presents sufficient evidence establishing that it is entitled to the presumption, the burden shifts to the claimant to show that the money is not forfeitable. If the claimant can show that he is the owner of the property, that the property was lawfully acquired, and that it was not unlawfully

---

[5] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 — 780-144.

used or possessed by the claimant, then the claimant has met his burden. *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 530 (Pa. 2005).

In the present case, Detective Minnich credibly testified before the trial court that the $1,112.00 in cash was located next to a sandwich bag containing ten Oxycodone tablets between DVDs on a shelving unit in the living room of Bates' residence. While Bates testified that the cash was recovered from his bedroom, the trial court specifically rejected this testimony. Thus, the Commonwealth was entitled to the rebuttable presumption that the cash was related to illicit drug activity, in effect satisfying the preponderance of evidence standard.

The burden then shifted to Bates to establish that the monies were lawfully acquired and were not unlawfully used or possessed by him. However, at the hearing before the trial court, Bates could not present any evidence in the form of income records, bank statements, or documents from his late father's estate, to verify the source of the monies. We note that there is no dispute that Bates worked part-time at a barbershop earning approximately $300.00 per week. Indeed, this formed the basis of the trial court's denial of the Commonwealth's forfeiture petition with respect to the $582.00 recovered from Bates' person. However, given the fact of the sale of narcotics to an undercover officer, the location of the $1,112.00 next to a baggie containing ten Oxycodone tablets, with an estimated street value of $10.00 to $15.00 per pill, and the lack of any corroborating documentation as to the source of the monies, we cannot say the trial court erred in granting the Commonwealth's forfeiture as to these monies and not directing the return of the same to Bates. [6]

_____

[6] We note that in the course of this argument, Bates asserts that the seizure and retention of his monies violated "his due process right to use[,] enjoy[,] and defend his property and his right not to have his property retained without authority of law and without just compensation. . . ." (Bates' brief at 9.) However, the monies were properly seized following his arrest for the sale of crack cocaine

9

## Evidence of Seized Items

Next, Bates argues that the trial court erred in failing to conclude that the Commonwealth did not present evidence of the seized items, namely the cash and a cell phone recovered from his residence. Bates proceeds to reference a federal rule of civil procedure relating to discovery and the voluntary disclosure of material to a defendant. However, Bates fails to relate this argument to the facts of the present case, thereby preventing this Court from performing any meaningful review of this issue herein.

## Accuracy of Amount of Monies Seized

Next, Bates argues that the trial court erred in failing to conclude that the Commonwealth did not present an accurate count of the amount of money retrieved from his residence. During the forfeiture hearing before the trial court, Bates alleged that the Commonwealth had actually recovered a total of $2,694.00 from his residence and his person but only reported $1,694.00. Bates also alleged at this hearing that Detective Minnich recovered antique monies in the bedroom of his residence and that he received these monies from his late father's estate. However, Bates did not present any evidence to substantiate these allegations before the trial court. To the contrary, the trial court found that Detective Minnich credibly testified as to all items recovered at the residence, that no monies were recovered from Bates' bedroom, and that he was familiar with antique monies and no such monies were recovered at the residence.

---

to an undercover officer and a subsequent search of Bates' residence, to which he consented. Upon the Commonwealth's filing of its forfeiture petition, Bates was provided with notice and an opportunity to be heard with regard to the origination of said monies. Hence, Bates was provided with sufficient due process and we see no merit to his allegations in this regard.

## Conclusion

Because the Commonwealth established a sufficient nexus between the $1,112.00 in cash recovered from Bates' residence and his illicit drug activity, and Bates failed to present sufficient evidence that such cash was lawfully obtained, thereby rebutting the presumption that said cash was related to the illicit activity, the trial court did not err in granting the Commonwealth's forfeiture petition in part. Bates' remaining arguments with respect to the Commonwealth's untimely brief and his various procedural issues were properly rejected by the trial court.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | No. 93 C.D. 2017 |
| v. | : | |
| | : | |
| $1694.00 US Currency/Coin | : | |
| | : | |
| Appeal of:  Marc S. Bates | : | |

## *<u>ORDER</u>*

AND NOW, this 29th day of November, 2017, the order of the Court of Common Pleas of Lebanon County, dated November 9, 2016, is hereby affirmed.

_____

PATRICIA A. McCULLOUGH, Judge