COMMONWEALTH of Pennsylvania

v.

$259.00 CASH U.S. CURRENCY.

**Appeal of Jonathan M. Cornish.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 2004.
Decided Oct. 18, 2004.
As Amended Oct. 19, 2004.

Jonathan M. Cornish, appellant, pro se.

Alisa R. Hobart and Mark C. Baldwin, Reading, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Jonathan M. Cornish (Cornish) appeals a decision of the Court of Common Pleas of Berks County (trial court) to grant the Commonwealth's petition for forfeiture of property under the act commonly known as the Controlled Substances Forfeitures Act (Forfeiture Act), 42 Pa.C.S. §§ 6801–6802. At issue is $259 that was found on Cornish along with a packet of heroin when he was arrested for possession of a controlled substance.

On January 5, 2002, at approximately 5:00 p.m., Cornish was stopped in the 100 block of South Eighth Street in Reading, Pennsylvania, by a police officer, who questioned whether Cornish possessed a

weapon. Cornish permitted a search of his person to demonstrate that he was not armed. During the search, the officer found a single packet of heroin, weighing one-half of one-tenth of a gram, in Cornish's watch pocket. Cornish also had in his possession cash in the amount of $259, which was seized by the officers. Cornish was charged with possession of a controlled substance, heroin, and he entered a guilty plea to the charge on February 8, 2002. He was sentenced to serve 12 to 24 months in a state correctional facility for this crime.

The following year, on January 22, 2003, the Commonwealth filed a petition to have the cash and heroin forfeited. Cornish filed an answer with new matter, and a hearing was held on June 19, 2003. The Commonwealth offered documentary evidence, including Cornish's guilty plea, sentencing and a copy of the criminal information charging him. In addition, the Commonwealth had Cornish admit that he was in possession of the $259 at the same time as he was in possession of the packets of heroin.[1] The Commonwealth then rested.

Appearing *pro se,* Cornish attended the hearing by telephone from the State Correctional Institution at Somerset, Pennsylvania. The Commonwealth questioned Cornish about his presence that day in a neighborhood known as a "high crime area" where "there [is] a lot of drug activities going on." N.T. 7, 8. Cornish explained that he lived there, at 118 South Eighth Street. In reply to further questioning, Cornish testified the he had just completed a drug rehabilitation program and had been working at a job at Burger King in Sinking Spring, Pennsylvania. He had been employed there since the beginning of October of 2001. On the date of his arrest, he had relapsed and purchased the heroin with the intention of returning to his room to use it.

Cornish testified that the $259 on his person was money he had received when he cashed his paycheck. In support, he offered into evidence his 2001 W–2 form showing that he earned $2,271 from October through the end of the year in 2001.[2] He also produced a printout from his employer showing that Cornish was paid $723 in the month of December 2001. Cornish explained that he did not retain his original pay stub; however, in preparation of the forfeiture hearing, Cornish requested his employer to generate a printout of his monthly wages, and it did so.

The trial court questioned Cornish as to when and where he cashed his paycheck. Cornish replied that it was either at the bank beside the courthouse or at the check cashing business nearby, but, one year later, he was unable to remember which one he had used. In response to further questioning by the court, Cornish stated that he believed the check cashing service charged a fee of 6%, which would have left a balance of $340 from Cornish's $365.24 paycheck.[3]

1. The Commonwealth questioned Cornish as follows: "And you do admit that at the same time you possessed the heroin that you possessed 259 dollars?" Cornish replied: "Yes. At the same time I was arrested I had one ten dollar bag of heroin that I was using. I am a drug user, and I did have additional monies on me, yes." The Notes of Testimony at 8 (N.T. ——).

2. Cornish was employed at Burger King until the day of his arrest.

3. The trial court then asked Cornish to account for the difference between the $340 and the $259 confiscated at the time of his arrest. Cornish seemed to misunderstand the question; he answered that he added the money to money he retained on his person from an earlier pay because he did not have a bank account.

The Commonwealth had averred in its forfeiture petition that the arresting officer observed Cornish leaning into the window of a double-parked vehicle immediately prior to his arrest; Cornish denied the allegation in his answer. The Commonwealth did not offer any evidence to support this allegation; the arresting officer did not testify, and the Commonwealth did not question Cornish about the circumstances immediately preceding his arrest or whether the $259 was the proceed of a drug sale.[4] Indeed, the Commonwealth did not offer any direct evidence that Cornish had been selling heroin just before his arrest.

At the conclusion of the hearing, the trial court made its finding from the bench, explaining as follows:

Well, the Court has heard the evidence and this is a civil matter. The burden on the Commonwealth is by a preponderance of the evidence and I find that this was money that you had obtained through your drug dealing with the heroin and that therefore it should be confiscated.

N.T. at 13. As a result of this appeal, the trial court issued a memorandum opinion on August 26, 2003, in which its ruling was explained as follows:

Claimant admitted to being in possession of the $259.00 at the same time he was in possession of the *packets of heroin* to which he pleaded guilty. He admitted that he was a drug user and had additional monies as well as one half of one tenth of a gram of heroin on him

when he was arrested. Claimant admitted he had relapsed after just getting out of a drug rehabilitation program in Wernersville, Pennsylvania. In this case there was an identifiable crime, to which claimant pleaded guilty, to which a nexus with the money could be made. We properly found that the Commonwealth met its burden by a preponderance of the evidence.

Opinion at 3 (emphasis added) (citations omitted). The trial court specifically rejected Cornish's testimony about the source of the $259 in cash as not credible:

Claimant argued that the cash confiscated from him was his wages earned from his employment. But, he also admitted that he had just purchased a ten dollar bag of heroin that he was on his way to his apartment to use when he was arrested. Claimant could not tell the court where he cashed his paycheck, how much he paid a check cashing business to cash his check or what he did with the balance of the money he asserted that he received from cashing his check. The court was not required to believe the claimant. Claimant failed to establish that he lawfully acquired the money and that it was not unlawfully used or possessed by him. The court found that the cash was money that claimant obtained through his drug dealing with the heroin and therefore it could be confiscated.

Opinion at 3–4 (citations omitted). Accordingly, the trial court granted the forfeiture, and this appeal followed.[5]

**4.** The Commonwealth did pursue a line of questioning regarding Cornish's future use of heroin: "Now, when you say you had been a drug user and that heroin is addictive, would to be fair to say once you use up what you have, you are craving for more, that you want more?" Cornish replied: "Well, you—certainly you would build up a tolerance, but at

that particular stage of my relapse I think I haven't reached that point to where I would just use it, use it, use it." N.T. at 10.

**5.** Our scope of review in an appeal from a forfeiture proceeding pursuant to the Forfeiture Act is limited to examining whether the trial court's findings of fact are supported by substantial evidence and whether the trial

On appeal, Cornish raises three issues. First, he asserts that the Commonwealth failed to meet its initial burden of proving that the currency seized from him on January 5, 2002, was derived from the sale of a controlled substance. Second, he asserts that the trial court's findings are contrary to the weight of the evidence. Third, he asserts that he met his burden of demonstrating that the funds seized from his person were derived from legitimate sources and, therefore, not subject to forfeiture.

In any forfeiture of currency under the Forfeiture Act, the Commonwealth has the initial burden of proof. The Commonwealth must show that the currency was "furnished or intended to be furnished ... in exchange for a controlled substance ... [or represents] proceeds traceable to such an exchange ..." or that the currency was "used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act." 42 Pa. C.S. § 6801(a)(6)(i)(A) & (B). The Commonwealth is required to establish a nexus between the confiscated currency and the illegal activity by a preponderance of the evidence. *Commonwealth v. Marshall,* 548 Pa. 495, 499, 698 A.2d 576, 578 (1997). If the Commonwealth establishes this nexus, the burden then shifts to the claimant to establish that he owns the money, that he lawfully acquired it, and that it was not unlawfully used or possessed by him. 42 Pa.C.S. § 6802(j); *Marshall,* 548 Pa. at 499, 698 A.2d at 578.

Cornish argues that the Commonwealth did not meet its initial burden. In response, the Commonwealth argues that it is entitled to the benefit of the rebuttable presumption created in the Forfeiture Act. We agree.

■ The Forfeiture Act creates a rebuttable presumption that cash found in close proximity to a controlled substance is "derived from the selling of a controlled substance."[6] Cornish's admission that he possessed the seized $259 at the same time as he possessed the heroin showed the requisite "proximity," thereby proving that the cash was derivative contraband of Cornish's illegal drug activity. In short, the Commonwealth satisfied its evidentiary burden by using the presumption.

Next, Cornish argues that the trial court's conclusions are contrary to the weight of the evidence. Cornish notes that the trial court's opinion states that he was in possession of *multiple* packets of heroin, which is not supported by the evidence. It is true that Cornish was charged with possession of a single packet of heroin; however, the trial court's opinion correctly noted the weight of the heroin on Cornish at the time of his arrest. Whether the trial court's notation to "packets" of heroin resulted from a typographical error or from a genuine misunderstanding is of no moment because it does not change the effect of the presumption.

court abused its discretion or committed an error of law. *Commonwealth v. Real Property and Improvements,* 574 Pa. 423, 832 A.2d 396 (2003).

**6.** The Forfeiture Act in relevant part provides: Such *money* and negotiable instruments *found in close proximity to controlled substances* possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act *shall be rebuttably presumed to be*

*proceeds derived from the selling of a controlled substance* in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S. § 6801(a)(6)(ii) (emphasis added). This rebuttable presumption is a legal presumption that requires the factfinder to reach a conclusion in the absence of contrary evidence from the opponent. *Waugh v. Commonwealth,* 394 Pa. 166, 146 A.2d 297 (1958).

It is also true, as noted by Cornish, that the Commonwealth offered no direct evidence that Cornish was selling heroin rather than buying it. However, under the rebuttable presumption in the Forfeiture Act, the Commonwealth did not have to present such evidence. Cornish's contentions with respect to the weight of the record do not change the effect of the presumption.

■ We turn, then, to the question of whether Cornish met his burden of proving that the $259 was derived from his wages earned at Burger King. Forfeiture is not favored under the law of this Commonwealth, and, therefore, forfeiture statutes are to be strictly construed. *Commonwealth v. Cox*, 161 Pa.Cmwlth. 589, 637 A.2d 757 (1994). The rebuttable presumption established in the Forfeiture Act allows the Commonwealth to meet its burden that currency found in proximity with a controlled substance was "furnished ... in exchange for a controlled substance." 42 Pa.C.S. § 6801(a)(6)(i)(A).[7] A rebuttable presumption forces the defendant to come forth or suffer inevitable defeat on the issue in controversy. *Commonwealth*

*v. DiFrancesco*, 458 Pa. 188, 194, 329 A.2d 204, 207, n. 3.

Cornish failed to rebut the presumption that the cash on his person at the time of his arrest resulted from a drug sale because the trial court did not believe his testimony that this cash was derived from his employment at the Burger King restaurant. The assessment of credibility is properly left to the fact finder. *Commonwealth v. Nelson*, 399 Pa.Super. 618, 582 A.2d 1115, 1118 (1990). It is true that Cornish produced supporting documentation in a monthly wage statement obtained from his former employer. An appellate court should not entertain a challenge to the weight given the evidence by the trial court in part because the appellate court is confined to the "cold" record.[8] *Commonwealth v. Wallace*, 522 Pa. 297, 315, 561 A.2d 719, 728 (1989). As the finder of fact, a trial court is permitted to draw any reasonable inference from the evidence presented. *Commonwealth v. Schill*, 164 Pa.Cmwlth. 594, 643 A.2d 1143, 1145 (1994).

■ The judgment of the trial court is supported by the record.[9] The Common-

---

7. Our Supreme Court has explained that "virtually all so-called 'criminal presumptions' are really no more than permissible inferences." *Commonwealth v. Mason*, 483 Pa. 409, 413, 397 A.2d 408, 411 (1979) (quoting *Commonwealth v. DiFrancesco*, 458 Pa. 188, 194, 329 A.2d 204, 208 (1974)). As noted by the dissent, there must be a "rational connection" between the fact proved and the ultimate fact presumed in a criminal case. *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). However, forfeiture proceedings are civil. *See* 42 Pa.C.S. § 6802 ("The proceedings for the forfeiture ... of property ... shall be in rem, in which the Commonwealth shall be plaintiff and the property the defendant ...."). It is not necessary, therefore, that a forfeiture be supported by an underlying criminal conviction. *Commonwealth v. One 1988 Ford Coupe VIN # 1FABP41A9JF143651*, 393 Pa.Super. 320, 574 A.2d 631 (1990).

8. In fact, the evidence must be viewed in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Speight*, 544 Pa. 451, 458, 677 A.2d 317, 320 (1996).

9. The dissent notes that the trial court did not base its holding on the statutory presumption. The trial court held that the evidence that Cornish had cash in one pocket and heroin in another pocket was sufficient for the Commonwealth to establish a nexus with a violation of the Controlled Substance, Drug, Device and Cosmetic Act. There was no question that Cornish violated this act by possessing heroin. The trial court believed that the cash facilitated this unlawful act. 42 Pa.C.S. § 6801(a)(6)(i)(B). However, we may affirm the trial court's holding on alternative grounds, *i.e.*, that the Commonwealth met its burden using the statutory presumption.

wealth satisfied its burden by proving that Cornish was arrested with $259 and one packet of heroin on his person. Cornish does not, and cannot, contest the facts underlying the rebuttable presumption in the Forfeiture Act. The burden then shifted to Cornish to prove a legitimate source for the cash. The trial court noted that the evidence presented by Cornish as to the source of the $259 was not verifiable, and Cornish's testimony that he purchased the heroin packet, rather than selling all but one of numerous packets, was found not to be credible. We cannot disturb these factual determinations.

For these reasons, we are constrained to affirm the ruling of the trial court granting the forfeiture.

## ORDER

AND NOW, this 18th day of October, 2004, the order of the Court of Common Pleas of Berks County, dated June 19, 2003, in the above-captioned matter, is hereby affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Commonwealth of Pennsylvania (Commonwealth) met its burden of proving that the $259.00 Cash U.S. Currency found on Jonathan M. Cornish (Cornish) represents the proceeds from his unlawful sale of heroin. To reach this result, the majority relies upon a statutory presumption that money found on an individual who illegally possesses a controlled substance is money derived from the unlawful sale of drugs. However, I submit that the majority's reliance on that presumption is contrary to our supreme court's holdings

on statutory criminal presumptions in *Commonwealth v. Mason*, 483 Pa. 409, 397 A.2d 408 (1979), and *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974).

In this case, Cornish pleaded guilty to possession of a controlled substance after police found a single packet of heroin weighing one half of one tenth of a gram in his pocket. Afterward, the Commonwealth sought forfeiture of $259.00 also found on Cornish that police seized at the time of the arrest. To prove that the $259.00 represented proceeds derived from the unlawful *sale* of heroin, the Commonwealth presented evidence of Cornish's unlawful *possession* of heroin. Cornish argues that evidence of unlawful *possession*, by itself, is insufficient to prove the unlawful *sale* of heroin. I suggest this is self-evident and agree.

The majority does not agree because of the statutory presumption created by section 6801(a)(6)(ii) of the Controlled Substances Forfeitures Act (Forfeiture Act).[1] This section states that when money is found in close proximity to an unlawfully *possessed* controlled substance, there shall be a rebuttable presumption that the money represents proceeds derived from the unlawful *sale* of a controlled substance. However, because this statutory presumption establishes a new crime,[2] the statutory presumption is a "criminal presumption," and "criminal presumptions" are really no more than "permissible inferences." (*See* Majority op. at 232 n. 7) (citing *Mason* and *DiFrancesco* ).

Indeed, our supreme court has stated that statutory presumptions establishing crimes create *inferences, not rebuttable*

---

1. 42 Pa.C.S. § 6801(a)(6)(ii).

2. *See* Section 13(a)(1) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of

April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–113(a)(1).

***presumptions.*** *Mason.* Explaining the distinction, the court stated that a ***presumption*** is a procedural device which not only permits an inference of the presumed fact, but also shifts the burden of proof to the opposing party to disprove the presumed fact. *DiFrancesco.* An ***inference*** is merely a logical tool which permits the fact finder to proceed from one fact to another *if* the fact finder believes that the weight of the evidence *and* the experiential accuracy of the inference warrant doing so. *Mason.*

This means that a statutory criminal presumption, being no more than a permissible inference, cannot, by itself, satisfy a party's burden of proof and shift the burden to the other party. Before the burden shifts, the party with the initial burden must present credible evidence weighing in favor of the accuracy of the permissible inference in the case before the court, i.e., the party with the initial burden must establish that *the inferred fact is **more likely than not** to flow from the proved fact. Mason; DiFrancesco.*

Here, the Commonwealth presented *no* evidence to prove it is more likely than not that, because Cornish had $259.00 and unlawfully *possessed* a single packet of heroin weighing one half of one tenth of a gram, Cornish obtained the $259.00 from the unlawful *sale* of heroin. In fact, the Commonwealth offered *no* evidence that Cornish *ever* sold drugs illegally. Because the Commonwealth did not establish the accuracy of the inference in this case, the trial court could not logically proceed from the proved fact of unlawful *possession* to the inferred fact of unlawful *sale*.[3]

Inasmuch as the Commonwealth failed to meet its initial burden of proof, unlike the majority, I would reverse.[4]

Judge PELLEGRINI joins in this dissent.

3. I note that, in deciding this case, the trial court did not even mention the statutory presumption. Instead, the trial court stated that the Commonwealth met its burden by proving that Cornish possessed "packets of heroin." (Trial ct. op. at 3.) However, as the majority indicates, the evidence established only that Cornish possessed *one* packet containing one half of one tenth of a gram of heroin. (*See* majority op. at 231.) If the Commonwealth had presented evidence that Cornish possessed multiple packets of heroin, then the trial court might have reasonably inferred that Cornish was selling heroin.

4. As a final matter, I note that, based on the statutory presumption before us here, the only users of illegal drugs who would not be drug dealers are those users who never carry money and drugs at the same time. Thus, a user who is arrested for possession of an illegal drug with only $1.00 in his pocket would be presumed to be a drug dealer. In my view, such a presumption is ludicrous. Although Cornish does not challenge the constitutionality of that presumption, in *civil* cases, a statutory presumption is valid only if there is a rational connection between the basic facts and the presumed facts. *See* McCormick on Evidence vol. 2 § 345 (4th ed.1992); *cf. DiFrancesco* (quoting *Tot v. United States*, 319 U.S. 463, 468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), for the proposition that a statutory presumption violates the requirements of due process "where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them . . . .").