**[J-39-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. 102 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court at No. 1021 CD |
| | : | 2014 dated April 19, 2016 Affirming the |
| | : | Order of the Monroe County Court of |
| $34,440.00 U.S. CURRENCY | : | Common Pleas, Civil Division, at No. |
| | : | 11208 Civil 2009 dated May 15, 2014, |
| | : | exited May 16, 2014. |
| APPEAL OF: RAFAEL FALETTE | : | |
| | : | ARGUED: May 9, 2017 |


**OPINION**


**JUSTICE BAER**                              **DECIDED: December 19, 2017**

In this discretionary appeal, we consider the burdens of proof applicable in civil *in rem* forfeitures of currency under Pennsylvania's Controlled Substances Forfeiture Act ("Forfeiture Act"), 42 Pa.C.S. §§ 6801 - 6802 (repealed), which, *inter alia*, provides that money is forfeitable to the Commonwealth upon proof of a "substantial nexus"[1] to certain prohibited drug activities under The Controlled Substance, Drug, Device and Cosmetic Act ("Controlled Substance Act"), 35 P.S. §§ 780-101 - 780-144.[2]    More

---

[1] Although the phrase "substantial nexus" does not appear anywhere in the text of the Forfeiture Act, this Court has previously held that in an *in rem* forfeiture proceeding, the Commonwealth bears the initial burden of demonstrating, by a preponderance of the evidence, that a substantial nexus exists between the seized property and a violation of the Controlled Substance Act. *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005).

[2] Relevant to the instant mater, the Forfeiture Act provides that there is no property right in the following:

(continued…)

specifically, we consider whether the Commonwealth can satisfy its evidentiary burden of proving a substantial nexus between the seized currency and prohibited drug activity by relying solely upon the Forfeiture Act's presumption at 42 Pa.C.S. § 6801(a)(6)(ii), which provides that money found in close proximity to controlled substances is rebuttably presumed to be the proceeds derived from the sale of a controlled substance, and, if so, the related assessment of how this presumption can be rebutted.[3]

The Commonwealth Court in the case *sub judice* determined that proof of proximity under the Subsection 6801(a)(6)(ii) presumption is sufficient to establish a substantial nexus and that the innocent owner defense set forth at 42 Pa.C.S. § 6802(j)

---

(…continued)

> (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.
>
> (B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S. § 6801(a)(6)(i).

[3] Subsection 6801(a)(6)(ii), which sets forth the rebuttable presumption, reads, in full, as follows:

> No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by the owner to have been committed or omitted without the knowledge or consent of that owner. Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S. § 6801(a)(6)(ii).

provides the sole method by which claimants can rebut the presumption.[4]  Though we agree that, generally, proof of proximity under the Subsection 6801(a)(6)(ii) rebuttable presumption may be sufficient to satisfy the Commonwealth's overall evidentiary burden of proving a substantial nexus for the purpose of currency forfeitures, we hold that the Commonwealth Court erred in concluding that the innocent owner defense provides the sole basis for rebutting that presumption.  Rather, for the reasons set forth below, we conclude that the presumption may be rebutted by demonstrating that the seized currency is not the proceeds of drug sales, independent of a claimant's ability to satisfy the innocent owner defense.  If the Subsection 6801(a)(6)(ii) presumption has been rebutted sufficiently, the burden of proof remains with the Commonwealth such that it must put on further evidence of a nexus to drug activity beyond the mere propinquity between the money and controlled substances.  Because the Commonwealth Court erred as a matter of law in holding otherwise, we vacate the Commonwealth Court's

---

[4] Subsection 6802(j) provides, in full, as follows:

> Owner's burden of proof.--At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:
>
> (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
>
> (2) That the claimant lawfully acquired the property.
>
> (3) That it was not unlawfully used or possessed by him.  In the event it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent.  Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa.C.S. § 6802(j).

order, vacate the trial court's order, and remand to the trial court for further proceedings consistent with this opinion.

## I. Background

The facts underlying this matter are straightforward and largely undisputed. On August 7, 2009, Juan Lugo ("Lugo"), a New Jersey resident, was driving with three passengers in his sister's vehicle on Interstate-80 in Monroe County, Pennsylvania, when he was pulled over for tailgating. Upon approaching the vehicle, Pennsylvania State Trooper Derek Felsman ("Trooper Felsman") detected an odor of marijuana and sought permission to conduct a search of the vehicle. Lugo consented to the search, and Trooper Felsman uncovered ecstasy pills in the cigarette outlet in the center console area of the vehicle and a small amount of marijuana by the rear passenger door.[5] Additionally, Trooper Felsman uncovered $34,440.00 in cash hidden in the seatbelt attachment of the "b-pillar"[6] on the passenger side of the vehicle. The Pennsylvania State Police confiscated both the cash and the controlled substances.

Though Lugo admitted to Trooper Felsman that the controlled substances belonged to him and were for his personal use, he denied ownership or knowledge of the currency found in the vehicle. Similarly, the other passengers in the vehicle denied having any knowledge of the recovered currency. Lugo was subsequently charged with possession of a controlled substance for personal use (ecstasy), possession of a small amount of marijuana for personal use, and possession of drug paraphernalia. Lugo ultimately entered a guilty plea to misdemeanor possession of marijuana. Importantly,

---

[5] The constitutional validity of the stop and subsequent consent to search is not currently at issue before this Court.

[6] A "b-pillar" is a post that connects a vehicle's roof to its body at the rear of the front door.

Lugo was never charged with any crime related to drug distribution or in connection with the $34,440.00 in cash uncovered in the vehicle. Indeed, as will be discussed in further detail *infra*, the Commonwealth averred in its subsequent forfeiture petition that Lugo signed a waiver denying ownership of the currency. Commonwealth's Petition for Forfeiture and Condemnation at ¶ 7.

Following Lugo's guilty plea, in a separate legal proceeding the Commonwealth filed a petition for forfeiture and condemnation of the $34,440.00 under Subsection 6801(a)(6)(i) of the Forfeiture Act, which is the subject of the instant appeal. As noted, the Commonwealth averred that Lugo admitted to ownership of the controlled substances, but denied any knowledge of the currency, and that all occupants of the vehicle signed waivers denying any knowledge or ownership of the currency. Commonwealth's Petition for Forfeiture and Condemnation at ¶ 7. Notwithstanding its acknowledgment in this regard, the Commonwealth maintained that the currency was forfeitable as proceeds traceable to an exchange of controlled substances. *Id.* at ¶ 8.

In response to the Commonwealth's forfeiture petition, Appellant Rafael Falette ("Falette"), who was not present in the vehicle during Lugo's August 7, 2009, arrest, filed an answer and new matter in which he claimed lawful ownership of the money.[7] Falette maintained that he was a longtime friend of Lugo's sister, the record owner of the vehicle in which the currency was found, and that the money represented the proceeds of a recent personal injury lawsuit settlement. In support of his claim, Falette submitted copies of two settlement checks, one dated June 17, 2009, in the amount of $14,496.22 and a second dated July 16, 2009, in the amount of $23,303.33, for a total

---

[7] Though Subsection 6802(a) of the Forfeiture Act provides that, in a forfeiture proceeding, "the Commonwealth shall be the plaintiff and the property the defendant," for ease of discussion, we refer to Rafael Falette, the claimed owner of the $34,440.00, as the appellant. 42 Pa.C.S. § 6802(a).

of $37,799.55. Appellant's Answer and New Matter at ¶ 13; *id.* at Exhibits 1 and 2. Falette claimed that after he initially deposited the settlement checks, he withdrew all of the money in cash so that he could impress his friends. Thereafter, he concealed the money in the b-pillar of the vehicle, purportedly because he did not want to utilize a bank. Then, unbeknownst to him at the time, Lugo borrowed the car, resulting in his arrest and the confiscation of the money.

Following a hearing, in which Trooper Felsman and Falette both testified, the trial court granted the Commonwealth's forfeiture petition. Initially, the trial court determined that the Commonwealth sufficiently established a nexus under the Forfeiture Act based upon, *inter alia*, the proximity between the minimal amount of drugs in the cigarette outlet and rear passenger door and the money in the b-pillar. Trial Court Order, 5/15/2014, at 1; *see also* 42 Pa.C.S. § 6801(a)(6)(ii) (providing that money found in close proximity to controlled substances is rebuttably presumed to be the proceeds derived from the sale of a controlled substance).[8] Moreover, the trial court found that Falette's testimony as to how he acquired the money was incredible and that his

_____

[8] In its two-page order granting the Commonwealth's forfeiture petition, the trial court also cited the following factors: the inconsistent statements made by the vehicle's occupants during the stop; the placement of the currency in the b-pillar; the packaging of the money in two plastic bags; and the fact that the vehicle was registered to a third party (Lugo's sister). Trial Court Order, 5/15/2014, at 1. The trial court's order did not elaborate on how these factors supported the Commonwealth's contention that the seized money represented the proceeds of drug sales. Because the trial court did not expand on this point in its Pa.R.A.P. 1925(a) opinion, it remains somewhat unclear to what extent the trial court relied solely upon the Subsection 6801(a)(6)(ii) rebuttable presumption in granting the Commonwealth's forfeiture petition. As will be discussed in further detail *infra*, however, the Commonwealth Court determined on appeal that the Commonwealth sufficiently proved a nexus between the money and a violation of the Controlled Substance Act *via* the Subsection 6801(a)(6)(ii) presumption. *See Commonwealth v. $34,440.00 U.S. Currency*, 138 A.3d 102, 111 (Pa. Cmwlth. 2016) (stating "the Commonwealth sufficiently established close proximity between the $34,440.00 and the drugs thereby triggering the statutory rebuttable presumption, and it had no obligation to present any more evidence") (citation omitted).

purported rationale for withdrawing all of the money in cash, namely, to impress his friends, was inconsistent with his action of concealing it within the b-pillar of someone else's vehicle. Trial Court Order, 5/15/2014, at 1. Accordingly, the court determined that he failed to rebut the Commonwealth's case by demonstrating the innocent owner defense under Subsection 6802(j) of the Forfeiture Act because he did not establish that he was the owner of the currency, that he lawfully obtained the currency, and that he did not possess the currency for illegal purposes. 42 Pa.C.S. § 6802(j). Falette appealed to the Commonwealth Court, arguing, *inter alia*, that the trial court erred in finding that the Commonwealth sufficiently proved a nexus between the currency and illegal drug activity.

In a divided 3-2 decision, an *en banc* panel of the Commonwealth Court affirmed the trial court's order granting forfeiture of the $34,440.00. *Commonwealth v. $34,440.00 U.S. Currency*, 138 A.3d 102 (Pa. Cmwlth. 2016). The Commonwealth Court observed that, in a forfeiture proceeding involving money, the Commonwealth bears the initial burden of proving by a preponderance of the evidence that there is a substantial nexus between the money being forfeited and a violation of the Controlled Substance Act. *Id.* at 108. The court further determined, based upon its own precedent, that the Commonwealth may satisfy this evidentiary burden simply by proving that the currency was found in close proximity to controlled substances in accord with the Subsection 6801(a)(6)(ii) rebuttable presumption. *Id.* at 110-111 (citing *Commonwealth v. $259.00 Cash U.S. Currency*, 860 A.2d 228, 232 (Pa. Cmwlth. 2004) (*en banc*)). Finally, the Commonwealth Court concluded that once the Commonwealth establishes that money is forfeitable by utilizing the Subsection 6801(a)(6)(ii) presumption, the burden then shifts to the claimant to demonstrate all of the elements of the innocent owner defense under Subsection 6802(j), namely, that he owns the money,

that it was lawfully acquired by him, and that it was not unlawfully used or possessed by him. *Id.* (citing, *inter alia*, 42 Pa.C.S. § 6802(j)(3)). Thus, the court held that the innocent owner defense is the sole method of rebutting the Subsection 6801(a)(6)(ii) presumption.

Applying its construction of the law to the facts presented, the Commonwealth Court acknowledged that Lugo was charged only with possession of a small amount of marijuana for personal use and that there was no evidence, apart from its proximity to the small amount of drugs, linking the $34,440.00 to drug sales. However, the court determined that these facts are irrelevant once the Subsection 6801(a)(6)(ii) presumption is triggered. *Id.* at 110. The court concluded that the Commonwealth here satisfied its burden of demonstrating that the drugs and cash were in close proximity because both were found within arm's-length of each other inside the vehicle, thus triggering the Subsection 6801(a)(6)(ii) rebuttable presumption. *Id.* at 108-09. The Commonwealth Court further held that Falette failed to rebut this presumption by demonstrating the innocent owner defense because the trial court disbelieved his explanation for how he got the money and why he concealed it in the b-pillar of the vehicle. *Id.* at 111. Concluding that it could not disturb the trial court's credibility determinations, the Commonwealth Court affirmed the trial court's order granting the Commonwealth's forfeiture petition. *Id.*

Judge Levitt authored a dissenting opinion, which was joined by then-President Judge Pellegrini. The dissent would have held that the trial court misapplied the law in concluding that the innocent owner defense is the only method of rebutting the Subsection 6801(a)(6)(ii) presumption, and that it therefore erred in granting the Commonwealth's forfeiture petition. In the dissent's view, the Subsection 6801(a)(6)(ii) presumption can be rebutted by evidence that the seized currency does not represent

the proceeds of a drug exchange, independent of the claimant's ability to demonstrate all of the elements of the innocent owner defense. *Id.* at 117. The dissent observed that this approach was utilized in *Commonwealth v. Tate*, 538 A.2d 903 (Pa. Super. 1988). In *Tate*, the Superior Court concluded that, although the rebuttable presumption applied in that money was unquestionably found in close proximity to controlled substances, the stipulated facts of record, which proved that the specific money in question was not derived from drug sales, adequately rebutted the presumption. *Tate*, 538 A.2d at 906.

Because the adjudicated facts of record in this case indicated that Lugo was not the owner of the $34,440.00, that he only possessed a small amount of marijuana for personal use, and that he was neither charged nor convicted of any drug distribution crimes, the dissent would have held that the Subsection 6801(a)(6)(ii) proximity presumption was rebutted and that the burden of proof remained with the Commonwealth to put on further evidence of a nexus between the money and illegal activity under the Controlled Substance Act in order to satisfy its burden of proving a *prima facie* case for forfeiture. *$34,440.00 U.S. Currency*, 138 A.3d at 117-18. The dissent therefore concluded that the Commonwealth did not establish a *prima facie* case for forfeiture, that Falette was not required to demonstrate the innocent owner defense, and that the trial court's rejection of Falette's testimony was irrelevant. *Id.* at 119. Consequently, it would have reversed the trial court's order granting forfeiture of the $34,440.00.

This Court subsequently granted Falette's petition for allowance of appeal, limited to the following two questions, as phrased by Falette:

> 1. If the rebuttable presumption under Section 6801 is established, can a finding that there is a "substantial nexus" be defeated by evidence of record before the burden is shifted back to the claimant to establish that he or she is the innocent owner?

2. Where the rebuttable presumption establishes that currency is presumed to be proceeds of selling controlled substances, but the Commonwealth's evidence is inconsistent with selling of controlled substances, can the presumption be defeated by the Commonwealth's own evidence?

*Commonwealth v. $34,440.00 U.S. Currency*, 158 A.3d 1245 (Pa. 2016).[9]

## II. Analysis

It is unnecessary to explain in detail the parties' arguments to this Court, as both largely present the same substantive arguments discussed in our summary of the Commonwealth Court opinions. Stated succinctly, Falette, the appellant herein, adopts the posture of the dissent below and contends that the Commonwealth could not rely solely upon the Subsection 6801(a)(6)(ii) presumption to establish a nexus between the money and drug sales because the presumption that the money was derived from drug sales was conclusively rebutted by evidence that Lugo possessed only a small amount of drugs for personal use and did not own the money uncovered from the vehicle.[10] Conversely, the Commonwealth argues that the majority below correctly determined that, once the Subsection 6801(a)(6)(ii) presumption is triggered, the Commonwealth

---

[9] In his petition for allowance of appeal to this Court, Falette also argued (1) that the Commonwealth Court erred in finding that the drugs were found within close proximity of the currency because both were within arm's reach inside the vehicle and (2) that the Subsection 6801(a)(6)(ii) presumption, as interpreted by the Commonwealth Court, violates the Fourteenth Amendment of the United States Constitution, the Excessive Fine Clauses of the Eighth Amendment of the United States Constitution, and Article I, Section 13 of the Pennsylvania Constitution. We specifically declined to review those contentions, however, and we offer no opinion concerning their merits at this time. Consequently, our recitation of the proceedings below and our corresponding legal analysis focus on the discrete issues of statutory interpretation for which review was granted.

[10] The American Civil Liberties Union of Pennsylvania ("ACLU-PA") filed an *amicus* brief in support of Falette's position.

has satisfied its burden of proving a substantial nexus and that the innocent owner defense is the sole method of rebutting that presumption.[11]

In order to answer the questions presented in this appeal, we must interpret Pennsylvania's Forfeiture Act set forth at 42 Pa.C.S. §§ 6801-6802. Issues of statutory interpretation present this Court with questions of law; accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Pennsylvania Pub. Util. Comm'n v. Andrew Seder/The Times Leader*, 139 A.3d 165, 172 (Pa. 2016). This Court's interpretation of the Forfeiture Act, and indeed of all statutes, is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991.

Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Moreover, technical words and phrases that have acquired a peculiar and appropriate meaning shall be construed according to such peculiar and appropriate meaning. 1 Pa.C.S. § 1903(a). However, when the words of a statute are not explicit, the General Assembly's intent may be ascertained by considering matters other than the statutory language, such as the occasion and necessity for the statute, the circumstances of the statute's enactment, the object the statute seeks to attain, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). When ascertaining the intention of the General Assembly in the enactment of a statute, we presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1). Finally, we observe that the law generally

---

[11] The Pennsylvania District Attorneys Association filed an *amicus* brief in support of the Commonwealth's position.

disfavors forfeitures, requiring forfeiture statutes to be strictly construed. *Commonwealth v. 1997 Chevrolet and Contents Seized from Young*, 160 A.3d 153, 193 (Pa. 2017).

Turning to the text of the Forfeiture Act at issue here, the relevant statutory provisions provide as follows:

§ 6801. Controlled substances forfeiture.

(a) Forfeitures generally.--The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

\* \* \*

(6)(i) All of the Following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

\* \* \*

(ii) No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by the owner to have been committed or omitted without the knowledge or consent of that owner. Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

\* \* \*

§ 6802. Procedure with respect to seized property subject to liens and rights of lienholders.

(j) Owner's burden of proof.--At the time of the hearing, if the

Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances.

42 Pa.C.S. §§ 6801-6802.[12]

Although the phrase "substantial nexus" does not appear anywhere in the Forfeiture Act, this Court has previously held that in an *in rem* forfeiture proceeding, the Commonwealth bears the initial burden of demonstrating, by a preponderance of the evidence, that a substantial nexus exists between the seized property and a violation of the Controlled Substance Act. *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005) ("*Esquilin*"). More specifically, in a forfeiture proceeding involving money, the Commonwealth bears the initial burden of proving either (1) that the money was furnished or intended to be furnished in exchange for a controlled

---

[12] While this case was pending on appeal, the General Assembly enacted the Civil Asset Forfeiture Reform Bill, P.L. 247, No. 13 § 10, effective July 1, 2017, which substantially altered the existing burden-shifting scheme for civil *in rem* forfeitures and rephrased the language used in the rebuttable presumption. However, our construction of Sections 6801 and 6802, which remain applicable in this appeal, is limited to the contemporaneous legislative history, *i.e.*, the history of the statute prior to its enactment. 1 Pa.C.S. § 1921(c)(7); *Thomas Jefferson University Hospitals v. Philadelphia Department of Labor and Industry*, 162 A.3d. 384 (Pa. 2017). Consequently, we do not look to the recent reforms by the Legislature to inform our interpretation of Sections 6801 and 6802. Moreover, it is beyond the scope of this opinion to discuss the specific effect of the newly enacted statute on the Commonwealth's burden in forfeiture proceedings.

substance, (2) that the money represents proceeds traceable to such an exchange, or (3) that the money was used or intended to be used to facilitate a violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A)-(B); *Commonwealth v. Marshall*, 698 A.2d 576, 578 (Pa. 1997).

In establishing one of these three bases for currency forfeiture, the Commonwealth need not produce evidence directly linking the seized property to illegal activity, nor is a criminal prosecution or conviction required to establish the requisite nexus. *Esquilin*, 880 A.2d at 529; *see also Commonwealth v. One 1998 Ford Coupe VIN No. 1FABP41A9JF143651*, 574 A.2d 631, 633 n.2 (Pa. 1990) (observing that conviction of a crime is not necessary to support an order of forfeiture); *but cf. Commonwealth v. Fontanez*, 739 A.2d 152, 154 (Pa. 1999) (stating that, while not dispositive, the fact that the appellant was never charged with a crime in relation to the seized money is probative of whether the money was indeed contraband). Rather, circumstantial evidence may suffice to establish a party's involvement in drug activity. *Esquilin*, 880 A.2d at 529. We have held that once the Commonwealth sustains its initial burden of proving a substantial nexus between money and illegal drug activity, the burden then shifts to the claimant, who can avoid forfeiture of the property if he demonstrates that (1) he is the owner of the property, (2) he lawfully acquired the property, and (3) the property was not unlawfully used or possessed by him. *Id.* (citing elements of the innocent owner defense under Subsection 6802(j)); *see also 1997 Chevrolet and Contents Seized from Young*, 160 A.3d at 193 (stating that once the Commonwealth satisfies its initial burden, "the burden shifts to the property owner to demonstrate that he or she did not know of the conduct giving rise to the forfeiture; or that the unlawful use or possession of the property was without his or her consent").

The principles set forth above are well-settled, and our holding herein should not be construed as disturbing the substantial body of case law interpreting the ordinary burden-shifting scheme established by the Forfeiture Act. However, the instant matter raises an issue of first impression for this Court, namely, the interplay between the Subsection 6801(a)(6)(ii) rebuttable presumption, the Commonwealth's overall burden of proof in a forfeiture proceeding, and the Subsection 6802(j) innocent owner defense, when the sole basis for finding a nexus is evidence that money was found in close proximity to controlled substances.[13]

As a threshold matter, we conclude that, under the plain language of the Subsection 6801(a)(6)(ii) presumption, the Commonwealth may satisfy its initial burden of demonstrating a nexus between money and prohibited activity under the Controlled Substances Act by relying solely upon the presumption that arises when money is uncovered in close proximity to controlled substances. By its plain terms, Subsection 6801(a)(6)(i)(A) (regarding forfeiture of money) provides, *inter alia*, that one basis for establishing a substantial nexus in currency forfeitures is by showing that the money represents the proceeds of an exchange of controlled substances, *i.e.*, the money is the proceeds of a drug sale. *See* 42 Pa.C.S. 6801(a)(6)(i)(A) (providing that "proceeds

---

[13] Though this Court observed in *Esquilin*, *supra*, that the money was found in sufficiently close proximity to trigger the Subsection 6801(a)(6)(ii) presumption, we considered this as merely one factor among several, including evidence that the defendant was observed in the actual act of dealing drugs prior to his arrest for possession with intent to deliver. 880 A.2d at 531-32. Accordingly, unlike the case *sub judice* where the Commonwealth Court determined that the Commonwealth satisfied its burden solely by using the presumption, *see $34,440.00 U.S. Currency*, 138 A.3d at 111 (stating "[o]nce the Commonwealth satisfied its burden by using the presumption, the burden shifted to Falette") (emphasis omitted), this Court's ultimate determination in *Esquilin* was based upon additional evidence that the money represented the proceeds of drug transactions. Thus, while instructive in construing the overall statutory scheme for currency forfeitures, *Esquilin* does not directly control our disposition of the instant matter.

traceable" to an exchange of controlled substances are forfeitable). Subsection 6801(a)(6)(ii) (rebuttable presumption), in turn, directs trial courts to presume this basis for forfeiture (namely, that the money represents the proceeds of drug sales) when the money is found in close proximity to controlled substances. *See* 42 Pa.C.S. §6801(a)(6)(ii) (stating "money and negotiable instruments found in close proximity to controlled substances . . . shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance"). Accordingly, we agree with the Commonwealth's construction of the Forfeiture Act to the extent it argues that proving proximity may be sufficient for proving a substantial nexus.

Having determined that proof of proximity may be sufficient to establish a substantial nexus under Subsection 6801(a)(6)(ii), we turn to the Commonwealth Court's conclusion that the General Assembly intended to establish the innocent owner defense as the sole method of rebutting the presumption that the seized money in question was derived from drug sales. As noted, the Commonwealth Court below was divided on this question and the Superior Court, which shares jurisdiction with the Commonwealth Court in *in rem* forfeiture proceedings, has come to a different conclusion as to how the Subsection 6801(a)(6)(ii) presumption can be rebutted. In short, while the Commonwealth Court has held that the innocent owner defense is the sole method of rebutting the Commonwealth's *prima facie* case when it relies upon nothing more than the Subsection 6801(a)(6)(ii) presumption, the Superior Court has determined that the presumption can be rebutted, independent of a claimant's ability to demonstrate the innocent owner defense, as to the specific question of whether the seized funds were in fact derived from drug sales. In order to resolve this apparent split in authority, a close examination of these disparate approaches is warranted.

In disposing of the instant matter, the Commonwealth Court relied upon its prior decision in *Commonwealth v. $259.00 Cash U.S. Currency*, 860 A.2d 228 (Pa. Cmwlth. 2004) (*en banc*). There, the Commonwealth Court addressed the role of the Subsection 6801(a)(6)(ii) presumption in a case in which the defendant in the underlying criminal matter was arrested with $259.00 in cash and a single packet of heroin weighing one-half of one-tenth of a gram on his person. *Id.* at 229. The defendant was charged with possession of a controlled substance. *Id.* Following his guilty plea to that charge, he was sentenced to 12 to 24 months of incarceration. *Id.* The Commonwealth then filed a petition to forfeit the $259.00 found on the defendant based upon his simultaneous possession of both the money and a controlled substance. *Id.* In response, the defendant admitted to being a recovering drug addict and that he had relapsed prior to his arrest. *Id.* He claimed, however, that the $259.00 was the remainder of a $365.24 paycheck he had recently received from his employer, and that he had just purchased a $10 bag of heroin when he was arrested. *Id.* In support of his claim, he submitted a printout of his wages provided by his employer. *Id.* The trial court, however, determined that the defendant failed to rebut the presumption by demonstrating the innocent owner defense under Subsection 6802(j). *Id.* at 230 (stating "[Defendant] failed to establish that he lawfully acquired the money and that it was not unlawfully used or possessed by him") (quoting trial court opinion). Therefore, it granted the Commonwealth's forfeiture petition based upon the Subsection 6801(a)(6)(ii) presumption. *Id.*

On appeal, the Commonwealth Court affirmed the trial court's order granting forfeiture, concluding that the Commonwealth satisfied its burden of demonstrating a nexus based upon the proximity presumption. *Id.* at 232 (affirming the trial court based upon the claimant's failure to rebut the statutory presumption). As noted above, the

Commonwealth Court in the case s*ub judice* relied upon its decision in *$259.00 Cash U.S. Currency* in concluding that Falette failed to rebut the Subsection 6801(a)(6)(ii) presumption by demonstrating the innocent owner defense. *See $34,440.00 U.S. Currency*, 138 A.3d at 111 (citing *$259.00 Cash U.S. Currency* and stating that "Falette did not satisfy his burden of demonstrating that he lawfully acquired, possessed, and used the cash as required under Section 6802(j) of the Forfeiture Act").

Conversely, in *Tate*, *supra*, the Superior Court concluded that demonstrating the innocent owner defense is distinct from rebutting the presumption that arises when money is found in close proximity to controlled substances.[14] In *Tate*, the defendant was arrested after selling cocaine to an undercover police officer. *Tate*, 538 A.2d at 905. Following his arrest, the police uncovered a briefcase in the defendant's vehicle, which contained one quarter of a pound of cocaine and $1,950.00 in cash. *Id.* Importantly, in the subsequent forfeiture proceeding, the Commonwealth stipulated to the following facts: (1) the defendant borrowed $3,000.00 from a bank for travel expenses incident to his purchase of cocaine that he intended to distribute; (2) the defendant purchased the cocaine using a separate $20,000.00 fund of his own money,

---

[14] Though *Tate* involved a prior version of the Forfeiture Act, codified at 35 P.S. § 780-128-129, the relevant provisions, including the rebuttable presumption, are substantively identical to Sections 6801 and 6802. *See* 35 P.S. § 780-128(a)(6)(ii), *repealed by* Act of June 30, 1988, P.L. 464, No. 79, § 7, *imd. effective*) (providing that "[s]uch money and negotiable instruments found in close proximity to controlled substances possessed in violation of this act shall be rebuttably presumed to be the proceeds derived from the selling of a controlled substance in violation of this act"). Additionally, in *Tate*, the defendant was the claimant and the forfeiture petition was filed in connection with the underlying criminal charges. As noted, in the case *sub judice*, the claimant is a third party not directly involved with the underlying criminal offense. However, we discern no basis for distinguishing between those cases in which the claimant and the defendant is the same person, and those in which the claimant is a third-party with respect to rebutting the presumption that arises when money is uncovered in close proximity to controlled substances.

which represented the proceeds of a prior drug transaction; and (3) the $1,950.00 found in the defendant's briefcase was inside a white envelope marked with the bank's logo along with receipts documenting the defendant's travel expenses. *Id.* at 904-05.

The *Tate* Court described the rebuttable presumption as "a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis have been established, absent contrary evidence." *Id.* at 906 (quoting *Commonwealth v. Shaffer*, 288 A.2d 727, 735 (Pa. 1972)). It further explained that a rebuttable presumption "forces the defendant to come forth or suffer inevitable defeat on the issue in controversy." *Id.* Though the Commonwealth sought to rely upon the presumption that the $1,950.00 was derived from the sale of controlled substances based upon the close proximity between the two within the defendant's briefcase, the Superior Court held that the presumption was rebutted by the facts of record, which clearly demonstrated that the money was the remainder of the bank loan, minus the defendant's documented travel expenses. *Id.* at 906 (stating "we find under the factual circumstances of this case the presumption has been adequately rebutted, lending no support to the Commonwealth's burden of proof"). The Superior Court made no reference to the innocent owner defense in its analysis of whether the presumption was rebutted.

The Superior Court ultimately concluded, however, that the Commonwealth nonetheless demonstrated a nexus even without the support of the rebuttable presumption because it proved that the travel expenses were used to facilitate the defendant's violation of the Controlled Substance Act, an alternative basis for currency forfeiture. *Id.* at 906-907; *see also* 42 Pa.C.S. § 6801(a)(6)(i)(B) (providing that money is forfeitable if "used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act"). Thus, while it ultimately found that the

money was forfeitable based upon the additional evidence offered by the Commonwealth, the Superior Court in *Tate* recognized that the presumption of a substantial nexus raised through proximity of drugs and money can be rebutted without proof of a claimant's innocent owner status. The Superior Court subsequently reiterated its holding in *Tate* in a case arising under Section 6801. *See Commonwealth v. Giffin*, 595 A.2d 101, 106 (Pa. Super. 1991) (holding that the presumption was sufficiently rebutted by the claimant and stating that "the lower court correctly ruled that these facts fail to sufficiently establish a nexus between the *specific* funds in question and any violation of the Controlled Substance Act by appellee") (emphasis in original).

Upon consideration of these competing interpretations, we find ourselves substantially aligned with the Superior Court's holding in *Tate*, and respectfully conclude that the Commonwealth Court in the case *sub judice* committed an error of law by conflating Falette's burden to rebut the Subsection 6801(a)(6)(ii) presumption with his burden to demonstrate the innocent owner defense under Subsection 6802(j). We reach this conclusion based upon the plain language of the relevant statutory provisions.

Initially, we note that, in the context of currency forfeitures, the Forfeiture Act does not seek to target money possessed by those who are merely recreational drug users. Rather, the Forfeiture Act provides that currency is forfeitable for one of three specific reasons: (1) the money was furnished or intended to be furnished in exchange for a controlled substance; (2) the money represents proceeds traceable to such an exchange; or (3) the money was used or intended to be used to facilitate a violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A)-(B). The rebuttable presumption set forth in Subsection 6801(a)(6)(ii) relates only to the second basis for forfeiture, *i.e.*, the money represents the proceeds of a sale of a controlled substance.

As the Superior Court in *Tate* correctly noted, this Court has previously described a rebuttable presumption as a rule of substantive law designed to force a trier of fact to reach a certain conclusion once a given set of facts are established, unless contrary evidence is introduced. *Commonwealth v. Shaffer*, 288 A.2d 727, 735 (Pa. 1972) (citing 9 Wigmore, Evidence § 2491 (3rd ed. 1940)); *see also Black's Law Dictionary* (10th ed. 2010) (defining "rebuttable presumption" as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence").[15] In light of this definition, the Subsection 6801(a)(6)(ii) presumption is clear to the extent it requires courts to presume that money found in close proximity to controlled substances is presumptively derived from drug sales. By its plain terms, Subsection 6801(a)(6)(ii) provides that this presumption is rebuttable and, thus, confers an opportunity for claimants to persuade the court that the money has an alternative origin. Importantly, however, the statute does not expressly set forth how this presumption can be rebutted.

The Commonwealth Court here determined that only by demonstrating the elements of the innocent owner defense can a claimant rebut the presumption. Looking to the text of the innocent owner defense, however, nothing in Subsection 6802(j) speaks in terms of rebutting the specific fact of seized currency being derived from drug sales. Instead, Subsection 6802(j) provides that once the Commonwealth satisfies its burden of demonstrating forfeitability under Subsection 6801(a), *i.e.*, has established a

---

[15] Though this definition refers to "contrary evidence," we believe that in an appropriate case, this may be in the form of evidence already submitted by the Commonwealth that the claimant relies upon to satisfy his burden of persuasion. Indeed, in *Tate*, *supra*, where the claimant did not introduce additional evidence, the Superior Court held that the facts of record sufficiently rebutted the statutory presumption. Thus, we do not believe that claimants necessarily carry a burden of production when seeking to rebut the Subsection 6801(a)(2)(ii) presumption.

substantial nexus, the burden shifts to the claimant to show, notwithstanding this nexus, that he had no involvement with the illegal drug activity and that his acquisition of the property was lawful.  42 Pa.C.S. § 6802(j) (providing that the claimant must show that he is the owner of the property, that he lawfully acquired the property, and that it was not unlawfully used or possessed by him).

Thus, by its plain terms, the innocent owner defense does not require that claimants disprove the Commonwealth's evidence that the property in question was unlawfully used.  *See Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011) (stating that, as a matter of statutory interpretation, "although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say") (citations omitted).  Instead, it establishes an affirmative defense that allows claimants who had nothing to do with the underlying illegal activity to recover the property by disassociating themselves from the Commonwealth's evidence regarding the nexus between the money and a violation of the Controlled Substance Act.  Indeed, this construction of Subsection 6802(j) is consistent with prior pronouncements from this Court in which we described the innocent owner defense as a means of protecting a property owner from the harsh result of forfeiture because of illegal drug use to which the owner did not consent.  *1997 Chevrolet and Contents Seized from Young*, 160 A.3d at 193; *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 661 (Pa. 1994).

By way of example, had the Commonwealth in the case *sub judice* put forth evidence that Lugo and his cohorts were *en route* to purchase drugs with the $34,440.00, instead of relying upon the Subsection 6801(a)(6)(ii) rebuttable presumption, it would have sufficiently demonstrated a *prima facie* case for forfeiture. *See* 42 Pa.C.S. § (a)(6)(i)(A) (providing, *inter alia*, that money is forfeitable if intended to be furnished in exchange for a controlled substance).  Pursuant to Subsection 6802(j),

however, an innocent owner could demonstrate that the money belonged to him, that he lawfully acquired it, and that he did not unlawfully use or possess it, notwithstanding the fact that other individuals were planning on furnishing the money in exchange for a controlled substance. We find that this example fairly illustrates why articulating the innocent owner defense is distinct from rebutting the specific fact that uncovered currency represents the proceeds of a drug transaction. Moreover, this view of the function of the innocent owner defense is reinforced by the final clause in Subsection 6802(j), which requires that an innocent owner's lack of knowledge of the drug activity was reasonable under the circumstances. *See* 42 Pa.C.S. § 6802(j)(3) ("In the event it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances."). The inclusion of this latter clause in the statutory scheme suggests that the General Assembly understood the innocent owner defense to allow claimants to recover the seized property by disassociating themselves from the underlying illegal activity, rather than requiring that they disprove the fact of the underlying illegal activity. Conversely, Subsection 6801(a)(6)(ii) permits claimants to rebut the specific presumption of illegal drug activity.

In summary, where the Subsection 6802(j) innocent owner defense allows claimants to recover property notwithstanding its connection to drug activity, Subsection 6801(a)(6)(ii), by its plain terms, confers an opportunity to rebut the specific fact that the seized money was derived from drug sales, independent of proving the innocent owner defense. In this case, the Commonwealth Court conflated the innocent owner defense, which, again, does not require claimants to disprove that illegal drug activity occurred,

with disproving that the specific money was derived from drug sales.[16]  We conclude that such an interpretation of the Forfeiture Act is contrary to the plain meaning of the relevant statutory provisions.

Additionally, our interpretation is consistent with the overarching purpose of the Act and avoids the adverse consequences of the Commonwealth Court's interpretation. *See* 1 Pa.C.S. § 1921(c) (providing that the intent of the General Assembly may be ascertained by considering the object the statute seeks to attain and the consequences of a particular interpretation).  As noted, in the context of currency forfeitures, the General Assembly has evidenced a clear intent to target those who perpetuate the drug trade, rather than those who are merely drug users.  However, the Commonwealth Court's interpretation may undermine this overarching legislative directive.  By holding that the presumption can be defeated only *via* the innocent owner defense, trial courts will be compelled to disregard the circumstances surrounding the seizure of the currency in cases where it is clear that, notwithstanding proximity, the money had no connection whatsoever to the seized drugs or drug sales.  Had the Superior Court utilized this interpretation in *Tate*, for example, it would have been compelled to find that the money recovered from the claimant's briefcase was specifically derived from drug

---

[16] Respectfully, Chief Justice Saylor's dissenting opinion engages in a similar analysis. The dissent concludes that the innocent owner defense is the sole mechanism by which a claimant can rebut the close proximity presumption, noting that this Court's prior decisions have made clear that "once the Commonwealth demonstrates the requisite substantial nexus, the 'Forfeiture Act directs that the burden shifts to the claimant'" to establish the innocent owner defense.  Dissenting Opinion, *slip op.* at 2 (Saylor, C.J.) (quoting *Esquilin*, 880 A.2d. at 530).  While we do not disagree with the dissent's observation as to the ordinary burden-shifting scheme once the Commonwealth has made out a *prima facie* case, we conclude that no *prima facie* case is made where the record fails to support the presumption that the specific money was derived from drug sales.  Accordingly, the burden never shifts to the claimant to establish the innocent owner defense under such circumstances.

sales, notwithstanding clear record evidence suggesting it represented the remainder of a bank loan. While the General Assembly undoubtedly intended to assist the Commonwealth in meeting its burden of demonstrating a nexus in currency forfeitures when it enacted the Subsection 6801(a)(6)(ii) presumption, we do not believe that it meant to go so far as to require a trial court to make a finding that is patently inconsistent with the evidence of record. *See* 1 Pa.C.S. § 1922(1) (directing courts to presume that the General Assembly did not intend a result that is absurd).

For the reasons set forth above, we hold that proof of the innocent owner defense is not required to rebut the Subsection 6801(a)(6)(ii) presumption and that trial courts may make a determination as to whether the presumption has been rebutted based upon the entirety of the record. Turning to the record in the case *sub judice*, the Commonwealth correctly observes that the trial court here made specific factual findings and credibility determinations regarding Falette's innocent owner defense, *i.e.*, the source of the money and his explanation as to why he concealed it in the b-pillar of the vehicle. However, it is unclear to what extent its findings in this regard were inexorably intertwined with its erroneous view that Falette was required to demonstrate the innocent owner defense in order to rebut the presumption that the money represented the proceeds of drug sales. Because we hold that this conclusion constituted an error of law, we remand to the trial court so that it may consider whether the record evidence before it rebuts the presumption that the seized currency represents the proceeds of drug sales, requiring the Commonwealth to put on additional evidence of a nexus to support its *prima facie* case.

### III. Conclusion

In summary, we hold that the rebuttable presumption set forth at 42 Pa.C.S. § 6801(a)(6)(ii) may be sufficient to satisfy the Commonwealth's initial burden of

demonstrating a nexus between seized currency and prohibited drug activity under the Controlled Substances Act. We further hold that it is not a necessary prerequisite to demonstrate the elements of the innocent owner defense under 42 Pa.C.S. § 6802(j) in order to rebut the presumption and that trial courts may consider the entirety of the record in determining whether claimants have rebutted the presumption. In this case, the Commonwealth Court conflated rebutting the presumption that arises when money is uncovered in close proximity to controlled substances with articulating the innocent owner defense. For this reason, we vacate the order of the Commonwealth Court, vacate the order of the trial court, and remand to the trial court for further proceedings consistent with this opinion.

Justices Todd, Donohue, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justice Mundy joins.

Justice Mundy files a dissenting opinion.